TAYLOR, *and others, against the* AUDITOR.

ERROR *to Pulaski Circuit Court.*

The act of 1836, authorizing the Auditor of Public Accounts "to sue for any de-mand which the people of the State may have a right to claim," &c., was in force on the 7th of September, 1838, and authorized him to sue, as Auditor, on a Sheriff's bond, given to the Governor and his successors in office.

But his right, so to sue, depends upon the interest which the State, or people, have in the debt, or thing demanded, and their right to claim the same; and, therefore, the people's interest in, or right to claim the demand, must appear by some appropriate averment in the pleadings, to enable him to maintain the action.

Where, therefore, suit is brought by the Anditor, for the use of the State, and he de-clares for the penalty of a Sheriff's bond, given to the Governor and his successors in office, a copy of which bond, with the condition, is given and accepted as oyer, and the only material averments in the declaration, tending to show his right to sue, are, that he is Auditor; that he sues as Auditor for the use of the State, and that by virtue of the statute an action has accrued to him as Auditor to sue for the penalty of the bond, for the use of the State ; the declaration shows no legal right in the peo-ple of the State to claim the debt demanded.

The right of the State to sue in such case, not appearing in the declaration, it is bad on demurrer, in arrest of judgment, or on error; and a demurrer to it should, for this cause, have been sustained, although it was not specially stated as ground of demurrer.

The failure of an officer to obtain an approval of his official bond, as required by the statute, does not affect his liability or that of his securities; if it was otherwise legally executed and delivered.

Where a joint and several co-obligor was not sued, and it appeared from the declara-tion that he was still living, it was good ground of general demurrer at common law; and may, perhaps, be a valid objection to a declaration in a suit commenced before the adoption of the Revised Code ; where it does not appear in the declaration that the obligors reside in different counties ; for if such be the case, the plaintiff should show it by proper averment in the declaration, in order to sue part, and not all of the obligors.

But the objection that parties who ought to be joined were omitted, was not available, even at common law, on demurrer, unless it appeared in the declaration that they were still living.  If this did not appear, the objection could only be taken advantage of by plea in abatement.

Where only part of the co-obligors in a bond are sued, it is not necessary to mention those who are not sued, in the declaration ; and if mentioned, it is not necessary to aver that they have not paid the bond.  Nor is it necessary, in such suit, to aver any demand or request of payment.

And as the objection for non-joinder cannot be taken on demurrer, unless it appears in the declaration that the party not sued, both signed and sealed the obligation and is still living, therefore, if he is alleged to be dead, it is not necessary to state that he executed the obligation.

A Sheriff's bond, given to the Governor and his successors in office, does not vest in him or his successors any beneficial interest in such contract.  He takes simply the the legal interest, and a naked trust.

Neither the Governor or Auditor can receive or release the debt, or change or discharge the obligation; nor can the Auditor discharge the legal liability of any person to the State, except in the manner prescribed by law, after payment or satisfaction of the demand has been made to such officer as is authorized to receive it.

A suit commenced by the Auditor, when he was authorized by the act of 1836, to bring such suit, and in which judgment obtained by him is reversed, after he is divested of such right to sue, may still proceed to final judgment in his name, after its return to the Circuit Court upon reversal.

This was an action of debt, founded on the official bond of the defendant, Taylor, as late Sheriff of Pulaski county, and his securities, against all of whom, except Benjamin Williams, who is alleged not to be sued in this action, and James Lowery, who in the *queritur* of the declaration, is alleged to be dead, the defendant who was plaintiff in the Circuit Court, in his official character as Auditor of Public Accounts, declares for the penalty of said bond, as follows, to wit: " for that whereas heretofore to writ, on the eighth day of October in the year of our Lord one thousand eight hundred and thirty-three, at, &c., to wit, in the county of Pulaski, aforesaid, and within the jurisdiction of this court, they the said defendants, together with one Benjamin Williams, who is not sued, by their certain writing obligatory, sealed with their, and each of their respective seals, which is now here to the court shown, the date whereof is the day and year last aforesaid, acknowledged themselves jointly and severally held and firmly bound unto John Pope, then and there Governor of the Territory of Arkansas, and his successors in office, in the just and full sum of fifteen thousand dollars above demanded, to be paid to the said John Pope, then and there Governor of the Territory of Arkansas, and his successors in office, which said writing obligatory was, and and still is, subject to certain conditions thereunder written." The plaintiff below, then " avers that he is Auditor of the State of Arkansas, duly elected, commissioned, and qualified as the law prescribes, by means whereof, and by force of the statute in such case made and provided, the right of action hath accrued to him, the said Elias N. Conway, Auditor of Public Accounts of the State of Arkansas, who sues for the use and benefit of the State of Arkansas, as Auditor aforesaid, to have, demand of, and sue the said defendants, for the use and benefit of the State of Arkansas, for the sum of fifteen thousand dollars above demanded," and assigns as a breach, "that they, the said defendants did not, nor did either of them pay unto John Pope, Governor of the Territory of Arkansas, nor to William S. Fulton, Governor of the Territory of Arkansas, who was the successor of John Pope, late Governor of the Territory of Arkansas, nor unto James S. Conway, Governor of the State of Arkansas, who is the successor of William S. Fulton, late Governor of the Territory of

Arkansas, during their continuance in office, as aforesaid, the said sum of fifteen thousand dollars, demanded as aforesaid, or any part thereof; nor have they, the said defendants; nor their said co-obligor, Benj. Williams, nor their said deceased co-obligor, James Lowery, or either of them, although often requested so to do, paid unto the said Elias N. Conway, Auditor of Public Accounts of the State of Arkansas, who sues for the use and benefit of said State of Arkansas, as Auditor, since the right of action, (by force of the statute, in such case made and provided,) hath accrued as aforesaid, said sum of fifteen thousand dollars, demanded as aforesaid, or any part thereof, but this to do, they, the said defendants have, and each of them hath hitherto wholly refused, and still doth refuse and fail to pay the said sum of fifteen thousand dollars demanded as aforesaid, or any part thereof, to the damage of the said plaintiff, for the use and benefit of the said State of Arkansas, five thousand dollars, and, therefore, for the use and benefit of the State of Arkansas aforesaid, he brings his suit, &c.

The process issued against the defendants named in the declaration appears to have been executed on Taylor, Cummins, and Clemens only, Cook and Roland, not being found to be served therewith. And the said defendants who were served with process to appear, entered their appearance at the October term, 1838, of the Circuit Court to which said process was returnable, and demurred to the plaintiff's declaration, which being joined, was overruled by the court, whereupon the plaintiff asked and obtained leave to amend his declaration, and filed the same as amended, on the 29th January, 1839. At the next term the defendant, Taylor, craved oyer of the obligation declared on, which was granted by filing a certified copy of the original, whereupon the defendants demurred to the declaration as amended, and issue being joined thereto, the demurrer was sustained; the plaintiff again amended his declaration by leave of the court, and the cause was continued, and at the September term, 1839, of the court below, the defendants again demurred to the declaration, and specially expressed therein. 1st. That "the said Elias N. Conway, as Auditor aforesaid, has no legal right, as such, to institute suit upon said supposed writing obligatory, in his own name as such Auditor.

2nd. No action can be sustained upon said supposed writing obligatory, because the same was never acknowledged and approved according to law.  3rd. That said supposed writing obligatory given, on oyer, varies materially from that described in said declaration.  4th. Because, by the law of the land, suit upon such supposed writing obligatory could only be sustained against all, or but one of said obligors; whereas, suit, in this case, is brought against only a part of the obligors, leaving out James Lowery and Benjamin Williams, two of the co-obligors in this writing, without any averment that said Williams is dead.  5th. Because there is no averment in said declaration that the said Benjamin Williams and James Lowery, did not pay said supposed debt to the said John Pope, William S. Fulton, and James S. Conway, Governors as aforesaid, or either of them; nor is there any averment that said James Lowery ever executed said writing obligatory.  6th. Because it is not alleged in said declaration that the said Williams and Lowery have hitherto wholly refused, and still do refuse, to pay said supposed debt, or any part thereof, to the said Elias N. Conway, Auditor as aforesaid, to wit: up to the time of the institution of this suit.  7th. Because no request is sufficiently averred in said declaration.

This demurrer was also joined by the plaintiff, and upon argument overruled by the court, and the amended declaration, which is substantially set forth and stated above, adjudged sufficient; and, thereupon, judgment by *nil dicit* pronounced for the plaintiff, for fifteen thousand dollars, the debt in the declaration mentioned, and one cent damages for the detention thereof, with the costs of suit.  The plaintiff then filed his suggestion of breaches of the condition of the bond sued on, and a writ of enquiry was awarded, returnable instanter; whereupon a jury was "empannelled, and sworn, well and truly to enquire and assess the damages," which returned a verdict as follows, " we, the jury, do find the suggestion of the breaches assigned, to be true, and assess the plaintiff's damages at the the the sum of seven hundred and forty dollars, together with the further sum of one hundred and sixty-seven dollars and seventeen cents for the interest for the sum, together with costs of suit," upon which another formal judgment for the several sums mentioned in the verdict, was entered for the plaintiff, and

23

" execution therefor" awarded. Upon the inquest of damages taken on the suggestion of breaches filed, the defendants objected to the evidence, adduced by the plaintiff, going to the jury, but their objections were overruled and they excepted to the opinion of the court, and by the bill of exceptions, which is signed and sealed by the court, spread on the record, all of the evidence offered or given in the case to the jury.

FOWLER & PIKE, for plaintiffs in error.

The questions presented by this record, we take to be as follows:

*First.* Whether the declaration shows upon its face any legal right in the plaintiff to bring the suit.

*Second.* Whether, where one obligor is dead, suit on a bond can be instituted against more than one of the obligors, without joining all the obligors who are living.

*Third.* Whether a Sheriff's bond is valid, so that a suit can be sustained upon it, when it is neither approved by the County Court, nor recorded according to law.

*Fourth.* Whether, on other grounds, the demurrer should have been sustained, and this includes an examination of the grounds assigned in the demurrer, and also of the further grounds of objection, that the declaration does not show that Lowery ever executed the bond, nor that William Cummins ever executed it.

*Fifth.* Whether it is error, that no order was made that the truth of the breaches be inquired into, and the damages sustained thereby assessed.

*Sixth.* Whether the jury should have been sworn to find whether the assignment of breaches was true.

*Seventh.* Whether the verdict and judgment, each being for *several* sums in damages, are good in law·

*Eighth.* Whether the judgment directly for the damages is correct, or whether there should have been judgment for the penalty, and a further judgment that the plaintiff have execution for the damages assessed.

*Ninth.* Whether the assignment of breaches is sufficient.

*Tenth.* Whether, under the Constitution, judgment can be ren-

dered against the securities of a Sheriff for *penalties* imposed upon him by law, as contradistinguished from *interest*.

We will examine the most important of these questions in the order in which they are presented.

*First*, then, does the plaintiff show upon the face of his declaration, a legal right to sue upon the bond declared on; or, in other words, that he is properly a party to the suit?

He claims this right under the provisions of " an act directing in what courts and manner suits may be commenced by and against the State, and for other purposes," approved, and in force, Nov. 8, 1836. By the first section of this act, it is provided, " that it shall, and may be lawful for the Auditor of Public Accounts of the State of Arkansas, to sue in the Circuit Court, for any demand which the people of the State may have a right to claim; and to be sued and to sue, to plead and be impleaded, to answer and to be answered, to defend and be defended, in said Circuit Court, in the name of the Auditor of Public Accounts, for the State of Arkansas." And, before we proceed to consider the bearing of this act upon the present case, generally, we may remark that the suit here is *not* brought " in the name of *the Auditor of Public Accounts*," but in the name of E. N. Conway, as Auditor of Public Accounts.

But admitting the plaintiff to be properly named and described, and admitting that the Auditor could sue under this law, at the time when he did sue, (which we shall hereafter contest,) let us inquire whether the declaration, upon its face, shows the Auditor's right to sue. The ground of action, in the declaration, is stated to be the execution of a bond by the defendants to Pope, Governor, and his successors; and it is alleged that the Auditor sues on that bond for the benefit of the State: that the right of action has accrued to him " by virtue of the Statute;" and the breach is that the defendants have not paid the $15,000, the penalty of the bond, to Pope or his successors, or to the Auditor, since his right of action accrued.. These are all the allegations in the declaration. What right of action do they show to exist in the Auditor? To be sure, it is alleged that he has a right of action, but it is necessary to show *how* that right of action arises. To give the Auditor any such right, the *demand* must be one

*which the people of the State have a right to claim.* What demand is shown in the declaration? Simply a demand for *$15,000,* upon bond given to Pope and his successors. The bond is stated to be accompanied by conditions—but what these conditions are is not stated. It is not alleged that the $15,000 is owing to the State. It is not alleged that Taylor was Sheriff, or that the bond was an *official* bond, under which a right of action could accrue to the State, or, taking this all for granted, still, it is no where alleged in the declaration that Taylor was indebted to the State, and so the State had a demand against him, secured by the penalty of his bond. In order, therefore, to sustain the Auditor in this suit, the court must infer, *first,* that Taylor was Sheriff; *second,* that the bond was his official bond; and *third,* that he was indebted to the State as an officer, for some default covered by his bond. These inferences, we contend cannot be made; and we do not see how it is to be argued that this suit can be sustained unless they are made. It seems to us, that in order to have shown the Auditor's right to sue on this bond, it would have been necessary to have stated the breaches in the declaration, and to have alleged Taylor's indebtedness to the State for moneys collected during the life of the bond. If this had been done, then there might have been some plausible ground for this suit. But where the Auditor sues on a bond given to Governor Pope, without showing any interest which the State has in the bond, except by alleging that the suit is for her use and benefit, his right to sue cannot be said to appear in the declaration.

We further contend that, even if we are mistaken as to this point, still this case does not come within the scope of the act. By that act, he is authorized to sue *for any demand which the people of the State may have a right to claim.* We know of no rule of construction by which this language can be so extended as to authorize him to sue on any instrument to which the State is not a party, although she may be beneficially interested therein, as every individual in the county, or who has had dealings with the Sheriff, also is. Suit may be brought on this bond, in the name of the Governor, for the use of any individual having a cause of action against the Sheriff and his securities: and so in the present case the Governor might have sued,

for the use of the State; and, perhaps, for the use of the Auditor of Public Accounts. Undoubtedly, the Legislature might have enacted that the Auditor should have the right to sue on this bond, as successor to Governor Pope, but they have not done so. They have not changed the *legal* liability upon such bonds, and therefore the general rule of law must hold, that the action on a contract, whether express or implied, by parol, under seal, or of record, must be brought in the name of the party or person in whom *the legal interest* is vested. 1 *Chit. Plead.* 3.

Moreover, the act in question cannot be construed to apply to bonds previously executed to the Governor of the Territory, unless it expressly included them; because, by section 4, of the Schedule to the Constitution, it is provided that " all bonds executed to the Governor of the Territory, or to any other officer or court, in his or their official capacity, shall pass over to the Governor, or other State authority, and their successors in office, for the uses therein respectively expressed, and may be sued for and recovered accordingly." And, as by this provision, the *legal interest* in this bond was vested in the Governor of the State and his successors, it could not be divested unless by direct words or strong implication.

But, furthermore, the act in question was *repealed* by the 9th sec. of chap. xviii, of the Revised Statutes, by which it is made the duty of the Auditor " to direct prosecutions *in the name of the State*, for all official delinquencies, &c., and against *all* debtors of the State:" which was in force Dec. 14th, 1838; and also by sec. 4, of chap. cxlvii., by which it is provided that " all actions in favor of, and in which the State is interested, shall be brought *in the name of the State*. The writ in this case issued on the 7th day of September, 1838, but no sufficient declaration was filed until long after the chapter concerning Auditor and Treasurer, and suits by and against the State, in the Revised Statutes were in force; and at a time, of course, when the Auditor was expressly required to bring *all suits* against debtors to the State, in the name of the State.

This point alone is so conclusive, that it is almost unnecessary to argue the other questions presented; but as some of them are mate-

rial to our rights, or will become so in a future action, if one should be brought, we proceed to consider;

*Second,* whether this suit should not have been brought against *all,* or *one only,* of the obligors living. The rule, on this point, is laid down by Chitty to be, that " if there be more than two parties to a joint and several contract," (and all bonds by our law are joint and several,) " as where three obligors are jointly and severally bound, the plaintiff must either sue them all *jointly,* or each of them separately." 1 *Chit. Plead.* 30. So in *Streatfield vs. Holliday,* 3 *T. R.* 782, *Buller, J.* said, " if three be bound jointly and severally in a bond, the obligee cannot sue two of them only, but he must either sue them all, or each of them separately." And though that doctrine has been several times questioned, yet it has been held good law from the time of Lord COKE." This decision is quoted in *Sergeant Williams'* note to *Cabell vs. Vaughn,* 1 *Saund.* 291, *e;* and he adds that *Buller* might have said from the time of *Henry* VIII; and he further lays it down to be the ground of plea in abatement, but not of non-suit, contrary to the case of *Gaulton vs. Challiner* and *Wilkinson, Stafford Lent Assizes,* 1794; but in this case it appears upon the face of the declaration that *Williams,* a co-obligor, is not sued, and of course it was unnecessary to plead it in abatement, for it was a good objection on demurrer. In *South vs. Tanner,* 2 *Taunton,* 255, where two of three obligors being sued, pleaded *non est factum,* it was held that to prove that there was a third obligor who was not sued, did not sustain the issue—but it was admitted that if the objection appeared on the face of the declaration, it would be good in arrest of judgment: and the rule is well known that nothing is good in arrest of judgment, which would not have been a good objection on demurrer. On this point, reference was made by *Lawrence, J.,* to the case of *Horner vs. Mow,* quoted in *Rice vs. Shute,* 5 *Burr.,* 2614. In that case *non est factum* was pleaded, and the jury found it to be the deed of both. It was then moved in arrest of judgment, *upon the face of the declaration;* the plaintiff's counsel gave it up, and it was arrested. See *Gould,* 206; *Vanderbergh vs. Blake, Hard.* 198.

The third point we present for the consideration of the Court without argument. By sec. 1, of the act of 1829, Ter. Dig., 158, She-

riff's bonds are to be approved by the County Court, and by the act of 1813, such bonds are required to be recorded. Ter. Dig., 518.

As to the matters to be considered under the fourth head, touching the sufficiency of the declaration, it is undoubtedly a fatal defect, that there is no averment that neither Williams nor Lowery had paid the amount mentioned in the bond, to Pope, Governor, or his successors in office. It is a universal rule, that the breach must be *co-extensive* with the contract, and not *too narrow.* Thus in an action by assignee, heir, or executor, the breach should be that the defendant did not perform the act, either to the original contractor or the plaintiff; and so, if against an assignee, heir, or executor, the breach should be that neither the original contractor, nor the defendant performed the act. And a declaration by husband and wife, or by an administrator, merely stating that defendant did not pay before marriage, or that he did not pay since the death, is bad. 1 *Saund. Plead and Ev.*, 134; *Elstob vs. Thorowgood,* 1 *Ld. Raym.* 284. So in sci. fa., on a recognizance of bail, and moved that if A. and B. be condemned they shall pay, or render, after an allegation that A. was condemned, it is not sufficient to say that A. and B. did not pay, or render, without adding "nor did either of them." Per *Ellenborough, C. J., Le Blanc* and *Bayley, J.*, in *Wilkinson vs. Thorley*, 4 *M.* and *S.* 33. And the rule is that a defective statement of the breach, so that the contract does not affirmatively appear to be broken, is bad after verdict; or, at any rate, on demurrer, 1 *Saund. Plead. and Ev.* 135; *Lunn vs. Payne,* 6 *Taunt.* 140; *Siclemore vs. Thistleton,* 6 *M.* and *S.* 9. *Sec.* 1 *Chit. Plead.* 327, 328. In the present case, the declaration shows that Williams and Lowery were bound equally with the defendants to pay the sum mentioned in the bond, to Governor Pope and his successors; and there is no allegation that they have not done so. Of course, the breach is not co-extensive with the contract. *Vide*, case of *Campbell* and *wife vs. Wm. Strong*, decided by late Superior Court.

The declaration, taken in connection with the bond, which on oyer became a part of it, is also defective, because it does not appear that William Cummins ever executed the bond. The name of William

Cummins is attached to it, but it is not stated in the declaration that he signed it by that name.

The fifth and sixth points presented, are governed by the 7th sec. of chap. cxii. of the Revised Statutes, which provides that in all suits upon such bonds as the present upon judgment for the plaintiff, upon demurrer, by confession or by default, " the court *shall* make an order therein, that the truth of the breaches assigned be inquired into, and the damages sustained thereby assessed." It follows of course that such order should have been made, and the jury sworn to find whether the assignment was true—neither of which was done in this case. The eighth point is also settled by sec. 8 of the same chap.; by which it is provided that judgment *shall be* entered for the penal sum mentioned, *as in other actions of debt*, with costs, and with a further judgment that the plaintiff have execution for the damages assessed.

As to the ninth point presented, it needs but a glance at the assignment of breaches, to see that it is entirely insufficient. It states, to be sure, that Taylor would not pay to the Auditor or his predecessors in office certain sums of money; but it does not state that those sums have not been paid by the other defendants. It states that he has not paid $148, the damages in accordance with law for the detention of the revenue; but it does not state, it does not show, at what rate or in what manner these damages are calculated. It claims interest on the same, *in accordance with* the Statute, but does not state at what rate, or when to commence.

That the *penalty* imposed by law on the sheriff, cannot constitutionally be collected of his securities, was decided by the constitutional law of South Carolina, in *The State*, vs. *Harrison*, *Rep. Const. Ct.*, 89, where her Justice Nott, after deciding that the securities to pay interest at the rate of fifteen per cent. for which their principal was liable by law, said, that if it was a *penalty* imposed upon the tax collector for neglect of duty, he should be of opinion, it could not be visited upon his securities. They bind themselves that he will perform all the duties of sheriff, and if he does not, they are answerable for all damages sustained by his misconduct, either by the State or individuals. Where he collects and retains money, those damages

sustained by the person entitled to the money, are, the amount of money retained, with legal interest thereon. That legal interest may be higher in the case of the State than of an individual, and five per cent. a month, or sixty per cent. a year, is certainly high enough. But the penalty of twenty or twenty-five per cent., (for, which it is, the declaration is not kind enough to inform us,) is like a fine or forfeiture imposed *as a* punishment on the individual, and does not enter into the contract to which his securities are parties. If sued for this, they have the right to say *non in haec foedera venimus;* as much as if it was attempted to make them pay, by suit on the bond, a *fine* imposed on the Sheriff for misdemeanor in office.

And this equitable principle is equally enforced in the civil law. Thus a person who becomes surety for an administrator of the public revenues, is only obliged for the restitution of the public money, and not for the penalties to which the administrator may be condemned for malversation. This was decided by the Emperor *Severus: fide jusores magistratuum in poenam vel mulctum non conveniri debere decrerit. L.* 68, *ff. dic. tit.,* and in general the engagement does not extend to the penalties to which the debtor has been condemned, *officio judicis, propter suam contumaciam;* for this is a cause extrinsic to the contract: *non debet imputari fide jusoribus quod ille reus propter suam poenam prestitit. L.* 73, *ff. dic. tit.* (*a.*) See 1 *Evans' Pothier*, 405.

CLENDENIN, *Contra:*

The authority to sue one or all or a part of the obligors to a joint and several writing obligatory is derived from *p.* 312, *Steele and Mc-Campbell's Dig.*, which is as follows, " and in all cases, hereafter, when the obligor or obligors, maker or makers, of any note, bill, or bond, or other contract, reside in different counties, it shall be lawful for the plaintiff or plaintiff's to institute a suit against *all*, or as *many* of them as he may think proper." The plaintiff's in error, in this case, it will be seen, on reference to the record, were residents of different counties, and the plaintiff elected to sue a portion of them, stating who was deceased and who was not sued. The bond, upon which suit was brought, was regularly approved and recorded, as will

more fully appear by a reference to the certificate of the Clerk of Pulaski county accompanying the grant of oyer in this case made.

This is a case depending so entirely upon the statutes of this State referred to before, and the records of the case now before the court, that it is thought unnecessary to trouble the court with any further authority, upon the points assigned for error in the brief of the plaintiffs in error, most of which it is conceived will be contradicted by a reference to this record of the Circuit Court, filed in the court in this above entitled case.

All of which is respectfully submitted.

RINGO, *Chief Justice*, delivered the opinion of the Court:

The plaintiffs, by their assignment of errors, present as error in the proceedings and judgment of the Circuit Court more than thirty matters, which, or as many of them as may be deemed material, will be considered, and the questions arising upon them disposed of by the court.

The first question arising upon the record and assignment of errors is this; is the declaration sufficient in law to enable Conway, as Auditor of Public Accounts of this State, to have and maintain this action against the plaintiffs in error? In considering this question, we will first examine and dispose of the several matters specially stated in the demurrer to the declaration. The first ground of demurrer, so stated, denies the legal right of the Auditor of Public Accounts to sue in his individual name and official character upon the bond mentioned in the declaration. This right depends upon the provisions contained in the Statute approved Nov. 8th, 1836, " entitled an act directing in what courts and manner suits may be commenced by and against the State, and for other purposes," which was in full force on the 7th day of September, 1838, when this action was commenced. See *Acts* 1836, *p.* 195. The first section, of said act, declares " that it shall and may be lawful for the Auditor of Public Accounts of the State of Arkansas, to sue in the Circuit Court for any demand which the people of the State may have a right to claim; and to be sued and to sue, to plead and be impleaded, to answer and be answered, to defend and be defended, in said Circuit Court, in the name of the Auditor of Pub-

lic Accounts for the State of Arkansas." The right of the Auditor to sue in his own name and official character, upon a bond payable to the Governor, and his successors in office, by virtue of the provisions of the statute above quoted, was made a question before this court, in the case of Conway Auditor, &c., *vs.* Woodruff, *et als.*, decided at the last term, between which, and the case under consideration, no essential difference is perceived or believed to exist in regard to this question; and it was then held, that an action so brought, could be legally maintained, and we have not, as yet, discovered any reason to doubt the correctness of that decision, or the reasons upon which it is based, but no question as to what averments in the declaration are in such cases necessary to show the right of the people, or interest of the State, to the demand in suit, was, in that case, discussed or examined by the counsel, or the court. The authority of the Legislature to make the enactment, and the right of the Auditor derived from it, to maintain the action in his own name and official character, upon a contract or bond made directly payable to the Governor and his successors in office, being the only questions material to the present case, then discussed and decided, the court deemed it unnecessary to discuss the question then, as it was not adverted to, or relied upon, by the counsel for the defendants, and was not important, inasmuch as the judgment of the Circuit Court must have been affirmed upon a different ground, whatever might have been the result upon such investigation; and, therefore, it was silently passed over. But the same question arises on the demurrer to the declaration in the present case, and the plaintiffs in error insist that the declaration wholly fails to show any interest whatever of the State, or people, in the bond sued on, or the money demanded, and sought to be recovered, by the suit. It is therefore important to ascertain what legal right the plaintiff has shown, in the State, or people of the State, to claim the debt demanded of the plaintiffs in error; for it cannot, in our opinion, be denied that the Auditor's right to sue or maintain the action under the statutory provisions above quoted, upon the interest which the State or people have in the debt, or thing demanded, and their right to claim the same, and his right to sue is expressly limited to " any demand which the people of the State have a right to claim;" and, therefore, the people's

interest in, and right to claim the demand sued for, or sought to be recovered, must appear by some appropriate averment in the pleadings to enable him to maintain the action. Does it so appear from any thing contained in the declaration before us, that the State has any interest in, or right to claim the demand exhibited in this action? In our opinion it does not. The action appears, by the record, to be founded on the official bond of Taylor, as Sheriff of the county of Pulaski, executed by him, and his securities, to John Pope, Governor of the Territory of Arkansas, and his successors in office, and the demand claimed by the Auditor, for the use and benefit of the State, is the penalty of said bond, a copy of which, together with the condition thereunder written, appears to have been given as oyer, and filed as part of the record of this case, which was accepted as oyer by the plaintiffs in error, who thereupon filed their demurrer to the declaration. The only additional averments in the declaration, material to be noticed, are, that the plaintiff is the Auditor of Public Accounts of the State of Arkansas, duly elected, commissioned, and qualified, as the law prescribes; that he, in his official character as Auditor of Public Accounts for the State of Arkansas, sues for the use and benefit of the State, and that by virtue of the statute, in such case made and provided, an action hath accrued to him as Auditor aforesaid, "to have, demand of, and sue the said defendants, for the use and benefit of the State of Arkansas, for the sum of fifteen thousand dollars above demanded." Do these facts, in themselves, in any form in which they can be presented, admitting them all to be true, establish any legal right in the people of the State, to claim the debt demanded by the Auditor for the use of the State? Certainly they do not; for the obligation of the defendants set out in the declaration, is not to the State, nor is the State alone beneficially interested in it; the right to sue upon it, it is true may accrue to the State in like manner as to individuals, and when this action was commenced, the Auditor, if he had elected to do so, was at liberty to cause suit thereon to be prosecuted in the name of the Governor, for the use of the State, precisely as individuals could do for their own use; but the statute authorizing suits to be prosecuted in the name of the Auditor of Public Accounts for the State of Arkansas, "for such demands as the people of the

Taylor, and others, *against* the Auditor.

State have a right to claim," is in derogation of the common law, and only gives the right to sue in the name of the Auditor in cases where the State has a legal right to the subject matter of the demand; and, therefore, upon every principle of law, such right must appear on the face of the pleading, otherwise the case cannot be considered as within the statute, and the omission will be fatal on demurrer, in arrest of judgment, or on error, because it omits to state any title or cause of action at all in the State, and cannot therefore be regarded as a title defectively stated, and therefore, as no legal liability on the part of the defendant below to pay the money to the State, which the Auditor claims of them for the use of the State, is shown in the declaration, the demurrer thereto was for this reason well interposed, and ought to have been sustained whether the defect was specially stated in the demurrer or not.

The second matter specially stated in the demurrer as a ground of demurrer, is within the principle decided by this court, in the case before mentioned, of Conway, Auditor, &c., *vs.* Woodruff, *et als.*, where it was held that the failure of the officer to obtain the approval of his official bond, as required by the statute, does not in any manner affect the liability of the officer and his securities in such bond, if it is in every thing else legally executed and by them delivered as their obligation, and therefore the omission to set forth such approval in the declaration is not a defect available upon a general demurrer.

The third objection asserts that there is a material variance between the obligation given on oyer and that described in the declaration, but fails to point out the particular variance, and no such variance as would be fatal to the declaration on general demurrer is perceived by the court.

The fourth objection rests upon the assumption that Benjamin Williams, who is alleged to be a co-obligor, and not sued with the defendants below ought to have been joined in the suit, and this, if the additional fact that he is still alive appeared in the declaration, would, by the common law, be a good ground of general demurrer, and perhaps it may be a valid objection to the present declaration, as it is not stated therein that the obligors or makers of the bond sued on reside in different counties, so as to bring the case within the provisions of

the statute, passed 10th January, 1816, and in force here when this action was commenced, *Ark. Dig.* 312, which declares that "in all cases hereafter where the obligor or obligors, maker or makers, of any note, bill, bond, or other contract, reside in different counties, it shall be lawful for the plaintiff, or plaintiffs, to institute suit against all, or as many of them as he may think proper, and it shall be lawful for the Clerk of the court, in which such suit shall be instituted to make out a separate summons, or capias, as the case may be, against the person or persons residing in a different county directed to the Sheriff of the county, or counties, where such person or persons reside, and endorse on such writ, that it is a counterpart of the writ issued, where such suit is commenced." These statutory provisions innovate upon, and change the common law, so far as to authorize the suit to be brought and maintained against any number of the obligors or makers of the contract, but upon every principle of law, the plaintiff to avail himself of this special privilege, and present his case within the operation of this statute, so as to exclude it from the operation of the general rule, must show by some proper averment on the face of his declaration, that the obligors, or makers of the contract, reside in different counties. The objection, however, as to the non-joinder of parties who ought to be joined in the action was not available on demurrer, even at common law, unless it appeared by the declaration or other pleading of the plaintiff, that the parties not sued, not only executed the contract, but also that they are still alive, and if this does not appear, the objection can only be taken advantage of by plea in abatement, and to this effect are the cases of *Rice vs. Shute*, 5 *Burr Rep.*, 2611; *Cabell vs. Vaughn, Rep.*, 291, *n.* 4; also *Gilman vs. Rives*, 10 *Peter's Rep.* 298.

In the case before us the declaration does not positively show that the co-obligor Williams was alive when the action was commenced, but it is simply stated that he executed the bond, and is not sued. This language strongly implies that he was living, but whatever the legal presumption from it may be, it is deemed unnecessary to decide, as the demurrer ought to have been sustained on the ground before stated, and if the case is remanded, the plaintiff will be at liberty to amend his declaration, and may obviate this objection, unless it may be

taken advantage of by plea in abatementat that stage of the pleading in the Circuit Court.

The matter of the fifth, sixth and seventh objections, specially stated in the demurrer, are not defects of which the defendants can avail themselves by general demurrer at common law, because if the debt demanded had been paid to Governor Pope, or either of his successors in office, by the obligor Williams, such payment, if legally made, would enure to the benefit of all his co-obligors, and the defendants could avail themselves by an appropriate plea of payment, and the breach assigned expressly negatives the payment by the defendants, or either of them, of the sum demanded, or any part thereof, to Gov. Pope, or either of his successors in office, or to the Auditor, since the right of action accrued to him by virtue of the statute before cited; and no special demand of payment was necessary to be averred as the sum demanded was legally due and payable according to the terms of the contract described, at the date of the bond, and it must in our opinion, be admitted that if there is no necessity to mention the co-obligors not sued in the declaration at all, *a fortiori* any allegation that they have not paid the debt must be unnecessary, and this appears clearly from the cases above cited to be the settled rule of the common law, for in some of them it is expressly stated that the deed or obligation set out on oyer, purported to have been sealed by persons not sued, and yet the objection was not deemed good on demurrer, because it did not appear that the person not sued had sealed the obligation and was still living; which, in every case must appear to entitle the defendant to avail himself of this objection, and, therefore, a plea in abatement, setting forth the facts, was necessary when they did not appear on the face of the plaintiffs pleading, and which, in our opinion, is yet the rule of law, applicable to such cases, and as there is no averment in the declaration that Lowery, who is alleged to be dead, ever executed the bond, the rule in every respect applies to the case before us, and overrules the three last mentioned grounds of demurrer.

Having now disposed of the demurrer, and the several matters contained therein, specially stated as defects in the declaration, it is deemed unnecessary to notice particularly any other of the numerous

matters which have been assigned as error in the proceedings and judgment of the Circuit Court, as the same questions may not arise upon another trial of the cause. It is, however, considered proper to state that the law in force, when the bond mentioned in the declaration bears date, requiring the Sheriff to give such bond to the Governor and his successors in office, does not vest in him or his successors in office, any beneficial interest whatever in the contract. He takes simply the legal interest, in his corporate character, as the legal and legitimate representative of the sovereignty of the people, and holds it as a naked trust for the use and benefit of any person, corporation, or body politic and corporate, who, or which may be damnified by any violation or breach of any stipulation contained in the condition thereof, and every person, corporation, or body politic and corporate, so damnified, is authorized by law to sue upon the bond, in the name of the Governor, for his or their use, from time to time, as often as may be necessary, until the whole penalty of the bond shall be satisfied or recovered. From which it appears that the Governor, and his successors in office, are vested by law simply with the legal interest in the obligation, without any authority to receive or release the debt, or in any manner change or discharge the obligation, otherwise than for the use of those who may sue and recover thereon for some breach of the condition thereof. And it will be observed also that the law has not conferred upon the Auditor any legal right to receive payment or satisfaction of any demand which the State or people have a right to claim; the power to sue and recover is alone vested in him by the provisions of the statute above cited, and therefore he cannot discharge the legal liability of any person to the State, or people of the State, except in the manner prescribed by law, after payment or satisfaction of the demand has been made to such officer as is authorized to receive it for and on account of the State, and, therefore, to enable him to maintain any action in his name, as Auditor of Public Accounts for the State, he is bound to exhibit such facts as " create a legal demand in favor of the State" against the defendants, and if the action be founded, as it is in this case, upon the official bond of a Sheriff, it must be shown that the demand claimed for the use of the State, has accrued by reason of some act

done, or omitted, by the Sheriff in the discharge of his official duties, in violation of some stipulation contained in the bond, with sufficient averments that payment or satisfaction of such demand has not been made to such person as is authorized by law to receive it, for, or on behalf of the State, and here it may not be improper to remark that in this, as well as in some other respects, the suggestion of breaches in the present case, as contained in the transcript of the record before us, is materially defective; and as the case must be remanded to the Circuit Court for further proceedings to be there had, we feel it our duty to state that, in our opinion, this suit may well be prosecuted to a final judgment on the merits of the controversy, in the name of the Auditor of Public Accounts for the State of Arkansas. It having been commenced before the statute authorizing him to sue was repealed, his right to prosecute it to a final adjudication on the merits is preserved by the provisions contained in the 29th and 31st sections of chapter 129 of the Revised Statutes of Arkansas, pages 698 and 699. The former provides that " the repeal of any statutory provision by this act, shall not effect any act done, or right accrued, or established, or any proceedings, suit, or prosecution had or commenced in any civil case, previous to the time when such appeal shall take effect; but every such act, right, and proceeding, shall remain as valid and effectual as if the provisions so repealed had remained in force;" and the latter declares that " no action, plea, prosecution, or proceeding, civil or criminal, pending at the time any statutory provisions shall be repealed, shall be affected by such repeal; but the same shall proceed, in all respects, as if such statutory provision had not been repealed, except that all proceedings had, after the taking effect of the Revised Statutes, shall be conducted according to the provisions of such statutes, and shall be, in all respects, subject to the provisions thereof, so far as they are applicable." These provisions were designed to protect the parties to all proceedings pending for adjudication in any of the courts of this State at the period of the taking effect of the Revised Statutes, in all their rights as they then existed; so that the adjudication upon any proceeding or pleading had prior to that time, in any case then pending, shall be governed and determined by the law in force when the proceeding took place, without reference to any

subsequent change made therein in regard to the same, or the like proceeding, by any of the Revised Statutes, requiring however, at the same time, all proceedings subsequent to the taking effect of the statutes, even in cases previously commenced and then pending, to conform to the provisions thereby made, so far as they are applicable; but they cannot, consistently with the spirit and intention of the law, be considered as applicable when their application would avoid or invalidate any proceeding previously had in a matter then pending, which was before valid and authorized by the law in force, applicable to it when it accrued, and the same rules apply *e converse*, as that no proceeding not previously authorized, or legally invalid, when it accrued, is aided thereby; and, therefore, as this suit was, in this respect, properly commenced, it can be legally prosecuted to a final adjudication in the name of the Auditor, notwithstanding the statutory provision authorizing it, is so far repealed, as to divest the Auditor of his right to commence suit in his own name and official character for any demand claimed by the State since the Revised Statutes went into operation.

Wherefore, it is the opinion of this court, that there is error in the judgment of the Circuit Court, of the county of Pulaski, given in this case, for which the same ought to be, and is hereby, reversed, annulled, and set aside, with costs, and the cause remanded to the said Circuit Court, with instructions to said court to sustain the demurrer to the declaration, and grant the plaintiff leave to amend, if he shall apply therefor, and for further proceedings therein to be had, according to law, and not inconsistent with this opinion.