IN THE

# SUPREME COURT

OF THE

## STATE OF CALIFORNIA,

IN OCTOBER TERM, 1851.

---

## THE PEOPLE *ex rel.* CASSERLY *vs.* FITCH.

The power of filling vacancies in office, vested in the governor of the state by Article V. section 8 of the constitution of the state, applies only to vacancies occurring under circumstances when the original appointing (or electing) power cannot act. Such power is limited by the period when the people or the legislature can elect or appoint, on the arrival of which his power ceases, and the right of appointment returns to the original appointing power.

The power to fill an office carries, by implication, the power to fill a vacancy, and all necessary authority to carry out the original power and prevent it from becoming inoperative.

An appointment to fill a vacancy in the office of state printer made by the governor during the session of the legislature is irregular and void.

The legislature having elected a state printer, and the state printer previously appointed by the governor, having resigned after the adjournment and during the recess, whereupon the governor appointed a person to fill the vacancy supposed to exist: *Held*, that this second appointment, as well as the former one, was irregular and void.

Under the provisions of law requiring certain officers to file their official bonds with the secretary of state, within a specified period, with the approval of the governor indorsed thereon and signed by him, (*Statutes of California for* 1850, *p.* 74, *sec.* 1, 2, 3,) and declaring an office to be vacated by the neglect of the officer to give the bond required by law within a specified period, ("*Act Concerning Offices,*" *passed April* 28, 1851, *sec.* 39,) the failure of the governor to indorse his approval on the bond, does not vacate an office where an incumbent has within the time fixed by law, given a sufficient bond, presented it to the governor for his approval, and deposited it in the office of the secretary of state.

[519]

APPEAL from the district court of the sixth judicial district, (Sacramento,) before ALDRICH, district judge, upon an information in the nature of a writ of *quo warranto* brought on behalf of the relator, Casserly, against Fitch, to determine the rights of the respective parties to the office of state printer. By consent of parties, judgment for the defendant was entered up in the court below; from which the relator, Casserly, appealed.

The statement of facts, as agreed upon, is as follows :—

On the trial of this case the respondent showed for warrant or authority by virtue of which he exercised the duties and filled the office of state printer, a commission from the executive department under the great seal of the state signed by John McDougal, governor, countersigned by W. Van Voorhies, secretary of state, and bearing date, May 2, 1851, appointing the said respondent state printer to fill the vacancy occasioned by the resignation of J. B. Devoe. The respondent further showed that he had, within the proper time, taken the oath of office and given bond which was approved of, in conformity with law.

The relator then proved that on the 1st day of May 1851, the senate and house of assembly proceeded to the election of a state printer, at which election the relator received 21 votes, which was a majority of all the votes cast, and was declared duly elected state printer for the period prescribed by law. And the relator further showed, that he had, within the proper time, taken the oath of office and tendered a good and sufficient bond to the governor of the state, (which bond is now on file in the state department,) in conformity with law. The relator then produced the concurrent resolution hereunto attached and marked (" A ") which passed unanimously just before the adjournment of the legislature.

The respondent then showed that Jonas Winchester, who had been regularly and legally appointed state printer, and had held the office for nearly one year,—on the 28th of March 1851, gave in his resignation of said office, which was duly accepted. That on the 31st of March 1851, James B. Devoe was appointed state printer by commission from the governor of that date, during the session of the legislature, and that said Devoe duly

qualified himself by taking the oath and giving the bond provided for by law.

And the respondent further showed that on the 2d day of May 1851, the said James B. Devoe resigned the office of state printer to which he had been appointed as aforesaid, and after the adjournment of the legislature, and that the respondent was appointed as aforesaid after said resignation, and that said respondent has performed the duties and discharged the obligations of said office ever since.

And it was further shown that on the 30th day of April 1851, the legislature passed a bill through both houses which provided for the abolishment of the then existing office of state printer, and creating the office anew : which bill is hereunto attached and marked (B.) which bill did not receive the executive sanction, nor did it become a law by lapse of time.

It was further shown that at the election by which the relator claims title to the office, the respondent was a candidate for election and received 13 votes. The relator also exhibited the certificate of his election as state printer on 1st of May as aforesaid, signed by the speaker of the house and president of the senate.

*Eugene Casserly*, (the relator,) and *James A. McDougal*, (the attorney general,) for the appellants.

*Eugene Casserly* stated and argued the following propositions :
I. By the constitution of the state, (*Art.* 11, *sec.* 6,) " all offi-" cers whose election or appointment is not provided for by this " constitution, and all officers whose offices may hereafter be " created by law, shall be elected by the people, or appointed " by the legislature."

This is the leading general provision of our state constitution on the subject of the choice of officers. It is obvious, from the letter and spirit of that instrument, and the policy of our entire political system, which submits to the ordeal of an election by the people, or their representatives, the lowest as well as the highest officers in the state, that the appointing power of the governor cannot be favored or enlarged by any implication of law.

But that, on the contrary, wherever it is brought in conflict with the right of election, by the people or their representatives, every proper presumption of law should be given in favor of the latter.

II. The office of state printer was one of those " created by " law," " after" the adoption of the constitution. It was the creation of one of the very first laws passed by the first state legislature ; and in pursuance of the power granted to the legislature by the constitution, (*Art.* 11, *sec.* 6,) it was made an office purely of legislative appointment, and to be retained entirely within the legislative " control."

The office of state printer, by the express terms of the Act creating it, (an Act passed in the exercise of the full constitutional power of the legislature,) by a long established course of precedents in all the other states of the Union, and by obvious and paramount reasons of public policy—is an office purely of legislative creation, use and necessity, a portion of the machinery of legislation, essential to its full and healthy action, and should be wholly within the legislative control, not only as to the original appointment, but as to all other acts necessary to continue the office within the " control" and supervision of the legislature.

The constitution (*Art.* 11, *sec.* 6,) gave to the legislature plenary powers of prescribing how all officers should be chosen ; and they have exerted those powers in the case of the state printer, by making it an office purely of legislative appointment, and to be kept within the legislative " control." (*See Act to create office of State Printer. Statutes of* 1850, *p.* 45, *sec.* 1.)

The duties of state printer have relation almost exclusively with the legislature. (*See Act defining his duties, sec.* 1, *Stat. p.* 83.)

Compare special words of Act creating office of state printer : (*sec.* 1, *Stat. p.* 45 :) " shall be elected by and under the entire " control of the legislature," with the words of the constitutional provision vesting in each house of the legislature the choice of its own officers : " Each house shall choose its own officers," &c. (*Constitution, Art.* 4, *sec.* 8.)

The power of " entirely controlling" the office of state print-

er being given by law to the legislature, all the rights and authority requisite to execute the original power, and prevent it from becoming inoperative, follow by necessary implication of law. This is the leading principle applied to determine the constitutional powers of Congress. (*See Hylton* v. *The United States,* 3 *Dallas,* 171; *McCulloch* v. *The State of Maryland,* 4 *Wheat.* 316; *Dobbin* v. *The Lake Erie Company,* 16 *Peters,* 435; *Gibbon* v. *Ogden,* 9 *Wheat.* 1; *Brown* v. *The State of Maryland,* 12 *Wheat.* 419; *United States* v. *Fiske,* 2 *Cranch,* 358; and see opinion of Chief Justice Marshall in the last case.)

*Cotemporanea expositio fortissima est in lege;* and the Act creating the office of state printer was passed directly upon the adoption of the new constitution, and by a legislature, many of the members of which were fresh from the labors and discussions of the constitutional convention.

That the intention of the legislature was to retain the office of state printer entirely within the legislative control, is too obvious to require argument; and that they supposed the words of the act sufficient to carry out their intention, is equally manifest. The Act carries with it the strongest force both of contemporaneous and legislative construction which it is possible to imagine.

III. Under the act creating the office of state printer, (*Stat. for* 1850, *chap.* 2, *sec.* 1,) and the Act "concerning offices," (*passed April* 28, 1851, *sec.* 41,) the power to fill vacancies in the office of state printer was in the legislature.

This flows also from the general authority over vacancies, necessarily resulting from the original authority to appoint, from the nature of the office itself, and the uniform course of practice in such cases.

The new Act "concerning offices," passed both houses of the legislature in the midst of the controversy as to the governor's assumed power, and the virtue of his commissions. Section 41 provides:

"Vacancies that may happen in offices, the appointment "to which is vested in the Governor and senate, or in the "legislature, shall be filled by the Governor, during the recess of "the legislature, by granting commissions that shall expire

" whenever the Governor and senate, or the legislature, shall ap-
" point a person or persons to fill such offices."

Compare this with the section in the old law for which it was
substituted :—

" Sec. 44. Vacancies that may happen in offices, the appoint-
" ment of which is vested in the Governor and senate, or in the
" legislature, shall be filled by the Governor during the recess
" of the legislature, by granting commissions ' that shall expire
" at the end of the next session.' "

Evidently, the intention of the legislature in striking out the
words " that shall expire at the end of the next session," and
substituting for them the words " whenever the Governor and
" senate, or the legislature, shall appoint a person or persons to
" fill such offices,"—was to meet the constitutional exception,
(*Const. Art.* 5, *sec.* 8,) " when any office shall, from any cause,
" become vacant, and no mode is provided by the constitution
" and laws for filling such vacancy, the Governor shall have
" power to fill such vacancy," &c.—and to " provide a mode by
" law for filling vacancies," in offices " the appointment of which
" is vested in the Governor and senate, or in the legislature,"—
and thus settle the then pending controversy between the legis-
lature and the Governor.

The words in the new law—" whenever the Governor and
" senate, or the legislature, shall appoint a person or persons to
" fill such offices,"—are sufficient to give the power to fill such
vacancies.

The principle that whatever the law assumes as having been
done, or as to be done, especially if in pursuance of an original
power, may rightfully and according to law, be done, is indis-
putable. It is the converse of the principle that what ought to
be done in the pursuance of a rightful authority the law will as-
sume has been done.

It is upon this principle that the power of the President to re-
move his cabinet officers, Secretary of State, of the Treasury,
&c., rests. (*See* 1 *Kent's Comm.* 309 ; 3 *Story's Comm.* 394–7.)

When a power is inherent (as of the people to vote for the
election of officers, or of the legislature to appoint the same)—a

The People *v.* Fitch.

very slight implication of law will suffice to authorize its exertion, for the purpose of giving it effect, or preventing it from becoming inoperative. (*See Henshaw* v. *Foster*, 9 *Pick.* 312–7,) and remarks of Chief Justice Parker :—" If an enlarged sense " of any particular form of expression should be necessary to ac- " complish so great an object as the convenient exercise of the " fundamental privilege or right, (as that of election,) such sense " must be attributed."

The constitution of the United States, and the constitutions of some twenty states of the Union, contain provisions on the subject of filling vacancies in office, which not only bear a striking analogy to those in our constitution and laws, but which by a most remarkable uniformity of expression, imply and assume the power to fill vacancies to be a necessary result of the original power to appoint.

The constitution of the United States, Art. 2, sec. 2, says : " The President shall have power to fill up all vacancies that " may happen during the recess of the senate, by granting com- " missions that shall expire at the end of their next session."

The practical exposition of this provision has been since the foundation of our government, that without any other or further provision of law, the President and senate have, upon the assembling of the senate, filled all vacancies in office, the appointment to which is invested in them ; and in like manner both houses of Congress have, upon their meeting, or during the session, filled vacancies in the offices, the appointment to which is invested in them.

For similar provisions, upon which the like practical construction has been put, see the constitutions of the following states : *Maine Const. Art.* 5, *p.* 1, *sec.* 15 ; *Massachusetts, amendment to Const. sec.* 4 ; *Connecticut, Art.* 4, *sec.* 20 ; *New York, Art.* 5, *sec.* 4 ; *ditto, Art.* 6, *sec.* 1, *Art.* 7, *sec.* 12 ; *New Jersey, Art.* 10, *sec.* 9 ; *Pennsylvania, Art.* 2, *sec.* 8 ; *ditto, Art.* 6, *secs.* 1 *and* 3 ; *Virginia, Art.* 4, *sec.* 4 ; *North Carolina, sec.* 20 ; *Florida, Art.* 3, *sec.* 15 ; *Alabama, Art.* 4, *sec.* 15 ; *Louisiana, Title* 3, *sec.* 50 ; *Kentucky, Art.* 3, *sec.* 10 ; *Ohio, Art.* 3, *sec.* 1 ; *Indiana, Art.* 4,

*sec.* 9 ; *Illinois, Art. 3, sec.* 8 ; *Michigan, Art. 5, sec.* 12 ; *Arkansas, Art. 5, sec.* 15 ; *Iowa, Art. 6, sec.* 8 ; &c., &c.

Taking into view the uniformity of expression in all these constitutions, and of the practical exposition put upon the provision in so many different states, although in all of them (except Iowa) the constitutional provision is more unlimited (so far as respects the Governor's power) than in our own state, the conclusion is irresistible that, both upon principle and by a long and unbroken current of legislative and judicial authority and precedent, the doctrine is now firmly established, that the power to fill vacancies is part and parcel of the original power to appoint, and can be exercised, as of course, whenever the occasion arises ; and that the appointments to fill vacancies, made during the recess of the legislature, or in the intervals between the elections by the people, are mere temporary expedients resorted to *ex necessitate* to prevent injury to the public interests, until the next session of the legislature, or the next election by the people, when the original power comes in play again, and the vacancy is regularly filled.

The same principle evidently runs through the whole of our own state legislation on the subject of vacancies in office. The new Act " concerning offices," passed April 28, 1851, was, obviously from its tenor, designed to provide for all vacancies that might possibly arise, in offices of every class, whether originally appointed—1st, by the governor ; 2d, by the governor and senate ; 3d, by the legislature ; and 4th, elected by the people. Yet it is remarkable that in several instances of offices elective by the people, there is no provision expressly authorizing them to fill vacancies at an election. The fact that the people have the power to fill them is everywhere assumed. (*See sec.* 46 *and* 47 *of the Act.*)

The same principle was applied in the decision of a recent case in New York, analogous to the present. (*Matter of Whiting,* 2 *Barbour,* 513.) The health officer of the city of New York, (an office of immense emolument,) is appointed by the governor and senate ; and all vacancies occurring in the office, whether from temporary inability or otherwise, are filled by the

The People *v.* Fitch.

Board of Health of the city of New York; but " the person so " appointed shall hold his office only till such inability be re- " moved, or the sense of the governor, or the governor and " senate, shall be declared." Under this law, Dr. Childs was appointed by the Board of Health of the city of New York to fill a vacancy occasioned by resignation. Soon afterwards Dr. Whiting was appointed by the governor and senate to the same office. Dr. Childs refused to vacate the office, claiming that Whiting had not been legally appointed ; in other words, that further legislation was required to enable the governor and senate to make a good appointment to fill the vacancy. The point was overruled on the argument of the case, (which was a proceeding in the nature of a *quo warranto*,) and judgment given for the relator.

If these doctrines are sound, the conclusion is, that the legis- lature had by law the right to fill the vacancy in the office of state printer; in which case, the constitutional provision relied on by the defendant, (*Const. Art. V, sec.* 8,) has no ap- plication : being, by its terms, designed to apply only to those cases where the constitution and laws provide no mode of filling the vacancy ; as will be seen by the next point in order.

IV. The constitutional provision, Art. V, sec. 8, was not de- signed to enlarge the appointing power of the governor, nor to restrict or take away the power of the legislature, or of the peo- ple. It undertakes merely to make provision for filling cer- tain vacancies temporarily, until the legislature or the people shall have had an opportunity to act by filling them perman- ently.

The words of the constitution are :—

" When any office shall, from any cause, become vacant, and " no mode is provided by the constitution and laws for filling " such vacancy, the governor shall have power to fill such " vacancy, by granting a commission, which shall expire at the " end of the next session of the legislature, or at the next elec- " tion by the people."

The object is not to extend the appointing power of the governor in derogation of the rights of the legislature or the

people. By its terms, the operation of the section is limited to those exceptional cases of vacancies, for filling which there is no other " mode provided by the constitution and the laws ;" and until " the end of the next session of the legislature, or the " next election by the people." Thus far and no farther the power of the governor extends. Whenever the original appointing power can act, the governor's authority is at an end.

The object of the section is to prevent injury to the public interests for the want of a person to discharge the duties of a public office.

As to the nature of such temporary appointments, and the light in which they are to be regarded, see *Tappan* v. *Gray*, (9 *Paige*, 511,) and remarks of Walworth, Chancellor. The provision of law, (1 *N. Y. R. S.* 123,) under which the case was decided, was analogous to that under discussion.

How this provision of the constitution was regarded by the first legislature, (many of the members of which had been members of the convention, and the whole of them witnesses of the formation of our constitution,) is evident from sec. 44 of the old act concerning officers. The section reads :—

" Vacancies that may happen in offices, the appointment of " which is vested in the governor and senate, or in the legisla- " ture, shall be filled by the governor during the recess of the " legislature, by granting commissions that shall expire at the " end of the next session."

Sec. 45 requires the governor " to lay before the legislature " at the earliest day practicable, a statement of all appoint- " ments made by him since the preceding session, to fill vacan- " cies."

This is the practical exposition by the first legislature of the constitutional provision, and it manifestly proceeds upon the grounds—1. That the governor's power to fill vacancies exists only during the recess ; and 2. That when the legislature meet they shall proceed to make regular appointments in place of the temporary ones made by the governor. And for this purpose he is to advise the legislature of all such appointments made by him since the preceding session.

The People *v.* Fitch.

And see *People ex rel. Barbour* v. *Mott*, October Term, 1851, Supreme Court of California.

The construction contended for by the defendant, involves the most irreconcileable difficulties and absurdities, and leaves a large class of vacancies unprovided for, upon the extraordinary theory that when the commissions of the governor expire, the appointing power of the legislature, or of the people, is *not* to take effect.

In other words, we are asked to suppose that the constitution, in allowing the governor to fill vacancies by issuing commissions " to expire at the end of the next session of the legislature " or the next election by the people,"—meant, that these vacancies should *not* be filled by the legislature during its next session—should *not* be filled at the next election by the people.

This is not the only difficulty in the way of this construction. In its terms, the provision is absolute, and the commission issued by the governor is not to expire " until the end of the " next session of the legislature." Thus, the commission of the defendant, issued to him, May 4th, 1851, would not expire until the end of the next session of the legislature—say May 1st, 1852; although the act creating the office of state printer makes his term of office the same with that of the state treasurer and controller; that is, two years ending December 31st, 1851. (*See Stat. of* 1850, *p.* 45–6.) So that a temporary appointment made to fill a vacancy, would give to the incumbent a better title, and a longer term of office by some four months, than if he had been in the first place regularly appointed.

Again : The section being absolute in its terms—under the interpretation sought to be fastened upon it, the governor having power to fill any vacancy by his commission, to last until the end of the next session, if a vacancy should " from any " cause" " happen" during the recess of the legislature, in the office of the secretary of the senate, or of the clerk of the assembly—he would have the right to fasten a creature of his own upon the senate or the assembly, however obnoxious to either house, for the whole of the next session.

The answer to an usurpation of power like this, would

be, of course, that by the constitution " each house of the legis-
" lature has the power to choose its own officers," and as a
necessary consequence the power to fill all vacancies in those
offices.

The analogy in the present case is perfect. By law the legis-
ture has the state printer under its " entire control," and conse-
quently the power to fill all vacancies in the office, except those
occurring during the recess.

Hence, there being a mode of filling such vacancies pro-
vided by law, the constitutional power of the governor does not
apply.

V. The election of a state printer by the legislature, May 1st,
1851, was valid and regular, was made under the existing laws,
and holds for the unexpired term.

By its own limitation, Winchester's commission expired on
the last day of the session. Devoe, of course, even if regularly
appointed by the governor to fill the vacancy occasioned by
Winchester's resignation, took no other or greater rights than
Winchester had ; and his commission expired on the same day
with Winchester's, under whom he held, if at all.

Admitting that Devoe was rightfully in the office, the elec-
tion by the legislature (May 1st, 1851,) took effect upon the
expiration of his term, which event took place the following
day.

This is the established law of elections, that no matter when
held, they take effect upon the expiration of the current term.
(*See Pratt* v. *Allen*, 13 *Conn.* 119 ; *and Easley* v. *Spence*, 7 *Ala.*
500.)

The election was held under the existing laws, and was, of
course, for the unexpired term, and until a successor should be
appointed and qualified. (*See Stat. of* 1850, *chap.* 2, *sec.* 1 ;
*and Const. Art.* 5, *sec.* 18 *and* 2.)

VI. The election of the relator, May 1st, 1851, being valid, the
refusal or omission of the governor to approve his official bond
has not vacated his office, nor prejudiced his rights.

The Act creating the office of state printer, (*Stat. of* 1850, *p.*
45,) requires that the printer, (*sec.* 2,) before entering upon the

duties of his office, " shall execute a bond for the faithful and " skilful performance of the work in the penal sum of $10,000, " acceptable to the governor, and payable to the state of Cali- " fornia, which bond shall be deposited in the office of the secre- " tary of state for safe keeping."

The act " concerning official bonds of officers," (*Stat. of* 1850, *p.* 74,) provides, (*sec.* 1,) that the bond of the state printer shall be approved by the governor, and filed and recorded in the office of secretary of state; that (*sec.* 2) such approval shall be indorsed thereon, and signed by the governor ; and (*sec.* 3) that the secretary of state shall not file and take charge of the bond until approved as prescribed by law.

The new Act concerning officers, passed April 28th, 1851, provides (*sec.* 39) that an office is vacated by the refusal or neglect of a person elected or appointed to give the bond required within the same time in which he is required to take the oath of office. Sec. 28 provides that " the oath of office shall be " taken and subscribed by every officer (whose oath is required " to be indorsed on his commission or certificate) within ten " days after the reception of his said commission or certificate, " or within ten days after the commencement of his term of " office, if his commission or certificate shall have been receiv " ed by him."

" The time within which the bond is to be " given or ex- " ecuted" is referred by the law to the time of the reception of the commission or certificate.

If from any cause the commission or certificate is not received, the bond need not be executed ; and the time for giving it begins to run only from the date of its reception.

This is, of itself, a sufficient answer to any technical objection in reference to the bond.

Admitting, however, that the bond should have been filed, the relator made a substantial compliance with the law. At least, he did every thing in his power to that end.

Supposing the relator bound to file his bond before receiving his commission, the evidence shows a compliance as far as was possible on his part with the requirements of the law. There

having been no laches on his part, the law will not allow him to suffer by the wrongful act of the governor. (*See* 4 *Barb. R. S. C. N. Y.* 621; 1 *Ibid.* 325.)

The truth is, however, that in no event does the failure to file the bond vacate the office. The essential act required is the "giving" or "executing" the bond. (*See Stat. for* 1850, *chap.* 2, *sec.* 2, *and "Act concerning offices," passed April* 28, 1851, *sec.* 39, *above quoted.*)

In this case, the relator did "give" and "execute" a bond within the specified time, and "deposit" it (as required by the Act creating the office, section 2,) in the office of the secretary of state. This was a "giving" and "executing" of the bond to the state, and the sureties were liable on it, and the state could bring suit for a breach, with all the rights and remedies which it could have in any case.

Formal defects do not vitiate the bond. See Act concerning official bonds, section 11, (*Stat. p.* 75,) and section 12.

It is only a total omission to give the bond which vacates the office. Any defects or irregularities short of that are cured by law. (*See U. States v.* ———, 1 *Brock.* 195; *Dixon* v. *U. States, id.* 177; *Van Deusen* v. *Hayward,* 17 *Wend.* 67; *Ring* v. *Gibbs,* 26 *Wend.* 502; *Speck* v. *Commonwealth,* 3 *Watts & Serg.* 324; *Hester* v. *Keith,* 1 *Ala.* 316; *Whitted* v. *The Governor,* 6 *Port,* 335; *State* v. *Findley,* 10 *Ohio,* 51.)

The relator's bond was "given" and "executed" to the state, when it was deposited in the office of the secretary of state. (*See Apthorp* v. *North,* 14 *Mass.* 167; 2 *Wend.* 615; *State* v. *McAlpin,* 4 *Iredell,* 140; *Young* v. *The State,* 7 *Gill. & Johns.* 253.)

The want of the approval does not vitiate the bond. (*See Stevens* v. *Treasurers,* 2 *McCord,* 107; *Musselman* v. *Commonwealth,* 7 *Barr,* 240; *Moore* v. *State,* 9 *Miss.* 334; *Young* v. *The State,* 7 *Gill. & Johns.* 253; *Davis* v. *Hayden,* 3 *Scam.* 35; *Auditor* v. *Woodruff,* 2 *Pike,* 73; *Taylor* v. *Auditor,* 2 *Pike,* 174.)

And see "Act concerning Official Bonds," &c., section 11, (*Stat. p.* 75,) and section 12.

The People *v.* Fitch.

These considerations respecting the filing, giving, or approval of the bond, have no application in this case; in consequence of the non-receipt by the relator of his commission.

No formal demand of the commission from the governor was necessary, on the part of the relator. The circumstances of the case—the power assumed by the governor, and the issuing by him of a commission to the defendant, May 2d, 1851, constituted a sufficient refusal.

VII. There being no vacancy in the office of state printer at the time of the appointment of the defendant, (May 4th, 1851,) that appointment was invalid.

The relator was elected by the Legislature, May 1st, 1851, and his election (even admitting the validity of Devoe's appointment) took effect immediately upon the close of the session, which occurred between midnight of the same day and the following morning.

There was therefore no vacancy in the office, and the governor's power of appointment, being only to fill vacancies, could not apply. (*See Constit. Art.* V, *sec.* 8.)

*Murray Morrison* and *Tod Robinson,* for the respondent.

*Tod Robinson* insisted upon the following points, viz. :—

I. The decision of the court below will be sustained by every legal intendment. It is the duty of the appellant to show affirmatively that the inferior court erred in its judgment.

II. It appears from the statement of the case, that Winchester, the original state printer, was duly and regularly chosen for that office. By the law which then existed, his term of office expired on the 1st of January, 1852.

III. Upon his resignation, if during the recess of the legislature, the successor's term of appointment would expire on the last day of the next session. But the resignation took place during the session of the legislature. By law then, there was no provision, nor is there any now, to fill vacancies happening during the session of the legislature. The constitution declares that when no such provision exists, the vacancy shall be filled

The People v. Fitch.

by executive appointment, which appointment shall expire at the end of the next session of the legislature.

IV. Devoe was appointed during the session of the legislature. His term of office would only then expire on the expiration of the original term of office, or at the end of the next session. Now, the next session is the session of 1852. He resigned after the adjournment of the legislature, when the respondent was appointed for the next period. It is not competent for the legislature to legislate a man out of office created by law, other than by abolishing the office itself; or, if it has the power to diminish the term of office, the incumbent would be entitled to the whole of the diminished period subject to the act of legislation; provided it did not extend the duration beyond the term of the original appointment.

V. Now, when Devoe was appointed, his term extended to the next January, as has been shown. The legislature did not abolish the office of state printer, as it was contemplated to do, and in reference to which the appointee was appointed. The legislature did not, nor did they attempt to, limit Devoe's term of office. They left him as they found him, with the right to the office until January, 1852. After the adjournment he resigned, and the respondent was duly appointed.

VI. It was the duty of the appellant to submit such bond as the executive would approve. It is a judicial presumption that the co-ordinate departments of the government will do their duty. And, if the governor has not approved this bond, it must be taken for granted that he refused the approval in the legitimate discharge of his duty, and in the proper exercise of his executive duty, until the contrary appears. Now, the statement of facts does not state on what ground the bond was refused, and the implication is irresistible that the bond was not such as the law requires the officer to give before he can enter on the discharge of his duties, in a controversy between the government and any one claiming title or right to any office. The appellant, if aggrieved in this, is entitled to his remedy in a direct proceeding against or with the executive.

The People *v.* Fitch.

*By the Court,* MURRAY, J.*  From the agreed statement of facts in this case, it appears that Jonas Winchester, who was duly elected state printer, resigned his office on the 28th of March, 1851.  On the 31st of March, 1851, while the legislature were in session, the governor appointed James B. Devoe to fill the vacancy created by said resignation.  Devoe continued in office until the 2d of May, 1851, after the adjournment of the legislature, on which day he resigned.  After the resignation of Devoe, the respondent, (Fitch,) was appointed by the governor, and has discharged the duties of the office ever since.

On the first of May, 1851, an election was held in the legislature for the office of state printer, and the relator, Casserly, received a majority of the votes cast, and was declared accordingly duly elected state printer for the unexpired term of said office, and thereupon he took the oath prescribed by law and tendered his bond of office.

For the respondent it is contended, that Winchester having resigned during the session of the legislature, and there being no provision for filling up a vacancy occurring during the session, the governor was empowered, by the provisions of the 8th section of the 5th article of the constitution, to fill the same,—that the term of Devoe continued until the end of the next session,—that Devoe having resigned after the adjournment of the legislature, the governor had the constitutional and legal power to appoint the respondent, to continue in office until the expiration of the session of 1852.

The relator relies upon his election by the legislature.

The office of state printer was created by an act of the legislature, who retained the power of electing and controlling the same.  Section 8, article 5, of the constitution, provides that "When any office shall become vacant, and no mode is pre-"scribed by the constitution and laws to fill the same, the gov-"ernor shall have power to fill such vacancy by granting a "commission, which shall expire at the end of the next session "of the legislature, or at the next election by the people."

---

* Appointed in the place of BENNETT, J. resigned.

The People *v.* Fitch.

This has in view vacancies in offices where the governor and senate or legislature have the power of appointment, or where they are elective by the people, and provides accordingly ; but such power of the governor is limited by the period when the people or the legislature can elect or appoint, on the arrival of which his power ceases, and the right of appointment returns to the proper appointing power. This was the construction in the case of *Barbour* v. *Mott*, (*October term*, 1851, *Supreme Court*,) and is sustained by cotemporaneous legislative exposition. The "Act concerning offices" of April 11, 1850, directs " that when " an office shall become vacant during the recess of the legislature, " the appointment of which is in the governor and senate, or the " legislature, the governor shall grant a commission, which " shall expire at the end of the next session." It thus appears that the legislature placed the same construction upon the constitution, limiting the power of appointment to those cases which might happen during the recess of the legislature, and did not think it necessary to provide for cases occurring when the power that originally filled was in readiness to act. The right of the legislature to elect and control the state printer cannot be defeated by any inference in favor of the appointing power of the governor. The power to appoint to an office carries, by implication, the power to fill a vacancy in such, and all necessary authority to carry out the original power and prevent its becoming inoperative.

We are of opinion that, on the resignation of Winchester, the power of filling the vacancy reverted to the legislature ; that the appointment of Devoe, and subsequently of the defendant, was irregular and void ; and that the relator was properly elected, and entitled to exercise the rights and duties of the office.

The judgment of the court below must be reversed ; and there appearing by the record no cause for a new trial, judgment must be entered that the relator, Casserly, be authorized to take upon himself the office of state printer, and that the respondent, Fitch, be ousted and excluded from the same.