## CON P. CURRAN PRINTING COMPANY v. CITY OF ST. LOUIS, Appellant.

### Division Two, June 16, 1908.

1. **CONTRACT: City Printing: Appropriations.** Where it appears that the printing for the mayor's annual message and accompanying documents had been awarded to the plaintiff after the taking of competitive bids in strict accordance with the charter and ordinances; that plaintiff was the lowest and best bidder and the contract was awarded to it at the price named in the bid; that a written contract was drawn up in pursuance of this bid, and approved by the city counselor, and a bond in the amount specified by ordinance was signed by an admitted solvent surety, and both were duly executed; that the contract was executed by the city register, whose duty it was to execute it on behalf of the city, and was countersigned by the city comptroller, and then returned to the register, who by the charter was custodian of all contracts with the city; and the bond was delivered to the register, but it was not approved by the mayor, on the unwarranted representation of the comptroller that the contract price for doing the work exceeded the appropriation therefor, the contract was complete, and the work having been done by plaintiff in strict compliance therewith, the city must pay the price agreed upon, in a suit brought directly against the city upon the contract.

2. ———: ———: **Withdrawing Signature.** After the contract is complete and has been formally executed by the register and countersigned by the comptroller, the erasure of his name thereon by the comptroller with the intention of withdrawing his approval, does not affect the contract's validity, or destroy the effect of his official act in countersigning the same.

3. ———: ———: **Bond: Approval a Precedent Condition.** Nor was the giving of the bond an essential condition in the making of the contract. By the charter and ordinances, the giving of the bond is not a precedent necessary condition to the contract, but they provide that after the contract is awarded to the lowest and best bidder he is required to tender a good and sufficient bond for the performance of his contract. It is made the duty of the mayor to approve the bond, and where the bond is presented to him in proper form and in the amount fixed by the ordinance, executed by the contractor and an admitted solvent surety, the validity of the contract is not affected by the fact that the mayor withholds his consent for an utterly insufficient reason.

4. ———: ———: ———: **Appropriation: Comptroller's Estimate.** Where the ordinance appropriated $33,000 for "printing for mayor, comptroller, auditor, register and treasurer," and there remains of such appropriation more than enough to cover the city's contract for printing the mayor's annual message and accompanying documents, it will not be held that the contract price exceeded the appropriation and for that reason it was invalid, because the comptroller in his estimate for funds required for the fiscal period recommended a sum less than the contract price for the "printing and stationery for the mayor, comptroller, auditor, register and treasurer and mayor's messages and accompanying documents." In such case, an objection that the contract price exceeded the appropriation is without any foundation in fact. The comptroller's estimate did not control the appropriation.

5. ———: ———: **Acceptance of Work.** Where the contract has been performed and the city has accepted the work thereunder, it cannot escape payment by reason of the wrongful act of its own executive officer.

6. ———: ———: **Remedy: Refusal to Approve Bond: Mandamus.** Where the plaintiff has made a binding contract with the city to do certain printing, in strict accordance with the charter and ordinances, and has complied in every respect with the terms of his contract and the city has received the full benefit thereof, and plaintiff tendered, as he was required by law to do, a valid bond, and the mayor refused to approve the bond under a misapprehension caused by a representation by the comptroller that the contract price exceeded the appropriation for the work, whereas there was an ample appropriation for the specific purpose, it would be unreasonable and unjust to drive plaintiff to a proceeding by mandamus to compel the mayor to approve the bond, as his only remedy to recover the money due him. Especially would that be the case where the city still contends that the mayor had a discretion to approve or disapprove the bond. The law never requires an unnecessary thing to be done.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

Affirmed.

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) The remedy resorted to in this action is wrong. On plaintiff's theory it should have proceeded

by mandamus. The petition alleges a valid contract, fully performed by plaintiff, an appropriation unexpended sufficient to cover the contract price, approval and certificate (voucher) of City Register. (a) Such facts, if established, entitled the plaintiff to a writ to compel the Auditor to draw his warrant. High's Extraordinary Legal Remedies (3 Ed.), sec. 94, pp. 104, 105; State v. Barker, 4 Kan. 379; State ex rel. v. Brown, 141 Mo. 26. (b) Or, if, under the facts, the substance of a contract had been agreed upon and plaintiff had been entitled to have the formal contract executed by the city, and there remained only the ministerial act of one or more executive officials, plaintiff should have resorted to mandamus to compel the doing of these acts. But until they were done, there was no contract. And plaintiff's failure to compel their performance precludes recovery in this case. (c) If, however, any one or more of the unperformed acts called for the exercise of official discretion, mandamus would not lie. And until the exercise of this discretion in the official performance of the act, the city has made no contract. Authorities, infra. Whether, therefore, the countersignature of the comptroller and the approval of the bond by the mayor, be merely ministerial acts, or not, plaintiff cannot recover. (2) There was no contract. Constitution of Mo., art. 4, sec. 48; R. S. 1899, secs. 6759, 6760; St. Louis charter, art. 15, sec. 3, art. 16, sec. 7; Campbell v. City, 71 Mo. 106; Rumsey Mfg. Co. v. Schell City, 21 Mo. App. 177; Anderson v. Ripley Co., 181 Mo. 60; Johnson v. School Dist., 67 Mo. 319; Terry v. Board, 84 Mo. App. 21; Crutchfield v. Warrensburg, 30 Mo. App. 463. At the time of the letting and award the plaintiff and the register distinctly understood that "the formal contract for the doing of said work would be drawn later." Eads v. Carondelet, 42 Mo. 113. (a) The document (or documents, if the statute requiring duplicates was

complied with) which was executed by the plaintiff was, until all the formalities required by the law had been complied with, at best but a proposed contract. (b) The alleged contract itself makes provision for approval, but does not specify by whom. Plainly, therefore, such approval was to be either that of the mayor, respecting the bond or of the comptroller, by his countersignature, or both. (c) The mayor never did approve the bond, which by law was an essential part of the contract. Charter, art. 15, sec. 1; Mun. Code 1901, secs. 1924, 1929. The city could not maintain an action on a bond not approved by the mayor; and, if the city could not sue on such a bond, neither can the contractor sue on the alleged contract. (d) The comptroller first countersigned the proposed contract, and subsequently, before it had left the possession and control of the mayor and become a contract, erased his signature. Charter, art. 14, sec. 20; Parish v. U. S., 8 Wall. 489; 2 Greenleaf on Evidence (16 Ed.), sec. 297; Standiford v. Standiford, 97 Mo. 231; Smith v. Mayor, 10 N. Y. 508; Abbe v. Justus, 60 Mo. App. 306; Rausch v. Michel, 192 Mo. 293. (e) Provisions prescribing the methods of entering into and executing municipal contracts are mandatory, and exclusive. Campbell v. St. Louis, 71 Mo. 106; Rumsey Mfg. Co. v. Schell City, 21 Mo. App. 177; Johnson v. School Dist., 64 Mo. 321; Nevada v. Eddy, 123 Mo. 558; City of Superior v. Norton, 63 Fed. 366. See, also: Ruggles v. Collier, 43 Mo. 353; Saxton v. St. Joseph, 60 Mo. 153; Thompson v. Boonville, 61 Mo. 282; Stewart v. Clinton, 79 Mo. 603; Anderson v. Ripley Co., 181 Mo. 60; 20 Am. and Eng. Ency Law (2 Ed.), 1157; Mechem's Public Officers, sec. 831, p. 555; McDonald v. Mayor, 68 N. Y. 23; Zottmann v. San Francisco, 20 Cal. 96. The charter "prescribes the mode of contracting, and the mode becomes the measure of the power." Los Angeles Gas Co. v. Tober-

man, 61 Cal. 201. (f) The onus of establishing the contract is upon the party who sets it up. Strange v. Crowley, 91 Mo. 294. (g) And any ambiguity is resolved in favor of the public. City of Superior v. Norton, 63 Fed. 359; Stein v. Water Co., 141 U. S. 79; Hamilton G. L. Co. v. Hamilton, 146 U. S. 268. (2) There was no contract, because there was no appropriation. See next point. (3) There was no appropriation. Constitution Mo., art. 10, sec. 19; St. Louis charter, art. 5, sec. 14; art. 4, sec. 21; 2 Am. and Eng. Ency. Law (2 Ed.), 514; 2 Abbott on Munic. Corp., p. 1024; State ex rel. v. Seibert, 103 Mo. 401; State ex rel. v. Brown, 141 Mo. 21; Mayor of Baltimore v. Gorter, 93 Md. 1; Bailey v. Kelley, 79 Pac. 735; Ristine v. State, 20 Ind. 338; State ex rel. v. Lindsley, 3 Wash. 127; McConnell v. Wilcox, 2 Ill. 359; Stratton v. Green, 45 Cal. 149; State v. Wallichs, 15 Neb. 457; State v. Babcock, 18 Neb. 221; Blair v. Lantry, 21 Neb. 247; Fones v. Erb, 27 Ark. 645. See, also, the somewhat similar cases of: Chicago v. Lithographing Co., 6 Ill. App. 560; Altemus v. Mayor, 6 Duer 446; Smith v. N. Y., 4 Sand. 220; Camson v. Weil, 57 Cal. 547; Bilby v. McKenzie, 113 Cal. 143; Higgins v. San Diego, 131 Cal. 309; Priet v. Reis, 93 Cal. 85; Woodward v. Reynolds, 58 Conn. 490; Institution v. Henderson, 18 Colo. 98; Ingram v. Calgan, 106 Cal. 113. For an example of what is a specific appropriation, see State v. Bordelm, 6 La. Ann. 68. (a) Nowhere is there any appropriation for printing "the mayor's message and accompanying documents." St. Louis charter, art. 5, secs. 10 and 14; Mun. Code 1901, sec. 2282. No money was ever "appropriated for that purpose." (1) The only appropriation for the year in question was for "printing and stationery for mayor, comptroller, auditor, register and treasurer, $33,000." (2) This general appropriation is itself void because of its generality. It does not com-

ply with the charter requirement that appropriations must be specific and definite. St. Louis charter, art. 5, sec. 14. (3) Even the comptroller's estimate was not specific, because several items, susceptible of being separately estimated, were lumped together. (4) The comptroller's estimate contained the term "mayor's message and accompanying documents," *eo nomine,* showing that a specific appropriation might have been made therefor. The municipal assembly, however, wholly omitted any reference to that term from any appropriation made for printing. Mayor v. Gorter, 93 Md. 1; State ex rel. v. Brown, 141 Mo. 21. (b) If the comptroller's estimate of $5,000, is the "specific and definite" ordinance, then the amount of the contract ($6,375) exceeds the appropriation and is void. Charter of St. Louis, art. 5, sec. 11. See, by analogy, Thornburg v. School Dist., 175 Mo. 31.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1) The contract was complete. The work had been awarded to plaintiff after the taking of competitive bids; the contract had been reduced to writing; had been executed by the plaintiff and delivered to the register, who received it and signed it on behalf of the city; it was countersigned by the comptroller, and was returned to the register, who was the legally designated custodian of it. It was, then, a complete contract. Charter, art. 16, secs. 1, 2, 7; General Ordinances, 1907, secs. 2037, 2038, 2044. (2) The act of the comptroller in running his pen through his countersignature after the contract had been returned to the register was ineffective to destroy the contract, because: (a) The delivery of the contract to the register after it had been executed by both parties and countersigned by the comptroller, constituted it a completely executed contract. Charter, sec. 7, art.

16. (b) The comptroller thereafter had no right or power to withdraw his countersignature. Marbury v. Madison, 1 Cranch 137. (c) The countersignature of the comptroller was not necessary to the validity of the contract. His countersignature is a ministerial act required upon a contract, which has already been made for the purpose of identification. Charter, sec. 7, art. 16; Saleno v. City of Neosho, 127 Mo. 627; State ex rel. v. District Court of Ramsey Co., 32 Minn. 181. (3) The contract was complete without the approval of the bond by the mayor. (a) Such approval was not a condition precedent to the taking effect of the contract. General Ordinances, 1907, sec. 2041; Hallock v. Lebanon, 215 Pa. St. 1. (b) Under the provisions of section 2041 of the General Ordinances, it became the duty of the contractor (in his case the Con P. Curran Printing Company) to give, and of the mayor to approve, a good and sufficient bond. These mutual obligations became a part of the written contract under the well-recognized rule of law that all statutes and ordinances applicable to a contract become as completely a part thereof as though set out therein in express terms. State ex rel. v. Gas Light Co., 102 Mo. 472; Chouteau v. Railroad, 122 Mo. 375; Havens v. Ins. Co., 123 Mo. 417; St. Charles v. Hackman, 133 Mo. 634; Pryor v. Kansas City, 153 Mo. 142; State ex rel. v. Kent, 98 Mo. App. 281. (4) If the giving of a good and sufficient bond, as required by the ordinance, be read into the contract as an obligation to be performed by the printing company, the failure of the mayor to approve the bond cannot impair plaintiff's rights under the contract, because: (a) Plaintiff fully performed this obligation on its part. (b) The city, in failing, through the action of its mayor, to approve the bond, breached the contract, and cannot be heard to complain. Smith v. Guyerty, 4 Barb. 621; Mayor v. Butler, 1 Barb. 325; Carey v. East Saginaw,

79 Mich. 77; Miller v. Mayo, 88 Cal. 568; 2 Beach on Pub. Corp., sec. 827; State v. Knight, 51 N. W. 1137; State ex rel. v. Dahl, 65 Wis. 510; People v. Scannell, 7 Cal. 432. (c) The work having been done according to the contract, and the printing having been accepted and used by the city, the purpose of requiring a bond, to-wit, to secure the faithful performance of the contract, was realized, and the giving of such a bond thereafter became immaterial. Hallock v. Lebanon, 215 Pa. St. 1. (5) The contract, being one which the city had the power to make, having been entered into in conformity with the charter and ordinances, having been duly performed by the plaintiff, and the printing having been accepted and used by the city, the city will not be heard to assert its own default as a defense in a suit for the contract price. Depot Co. v. St. Louis, 76 Mo. 393; State ex rel. v. Murphy, 134 Mo. 567; Water Co. v. City of Aurora, 129 Mo. 540; State ex rel. v. Milling Co., 156 Mo. 620; Pierce City Water Co. v. Pierce City, 61 Mo. App. 471; Devers v. Howard, 88 Mo. App. 260. (6) It cannot be asserted that the contract in question was invalid for want of an appropriation. City of Leadville v. Mathews, 10 Colo. 125; State ex rel. v. Smith, 11 Wis. 65; Hill v. Swingley, 159 Mo. 45.

GANTT, J.—This is an action to recover $6,375, the contract price for printing the "Mayor's Message and Accompanying Documents," pursuant to a contract between the Con P. Curran Printing Company and the city of St. Louis, made November 25, 1902, under the provisions of article 15 of the charter and chapter 26 of the General Ordinances, 1907, of the city of St. Louis.

The register of the city of St. Louis has general supervision of and executes all contracts for the public printing of that city. Section 2 of article fifteen

of the charter provides: "The annual message of the mayor and reports of the comptroller, with the accompanying reports of the other city officers, shall be printed in pamphlet form, the number of copies to be determined by a majority of both houses of the municipal assembly by joint resolution." Section 1 of article fifteen provides that "all job printing and binding shall be let by contract, subject to such regulations as may be prescribed by ordinance." Under authority of these provisions of the charter, the municipal assembly by section 2038 of the general ordinances provided (referring to job printing) that: "When the cost of the work is estimated at two hundred dollars and over, proposals shall be invited by advertisement in the papers doing the city printing." Section 2041 of the revised ordinances provides "the register shall require all contractors under this chapter to give good and sufficient bond for the faithful performance of said contract, to be approved by the mayor." Section 2044 provides: "All printing required by law, ordinance, the officers of the city or the municipal assembly, shall be done and made under the supervision of the city register."

On September 27, 1902, a resolution was passed by the council of the city of St. Louis, which was concurred in on October 6, 1902, by the house of delegates, by which it was ordered that one thousand copies of the "Mayor's message and accompanying documents" be printed in book and pamphlet form. At this time, Mr. Patrick R. Fitzgibbon was the city register, and Mr. James Y. Player was the city comptroller. Under the direction of this resolution, the register proceeded, on November 10th, to advertise, in due form, for bids for printing the documents referred to in the resolution. In this advertisement, the register reserved the right to reject any and all bids. The notice to bidders also provided that : "A bond of five thousand dollars,

to be approved by the mayor, will be required of the successful bidder for the faithful performance of the contract.'' The bids for doing this work were opened on November 15th, at which time it was found that the Con P. Curran Printing Company was the lowest and best bidder, and the contract was awarded to it at the price named in its bid, to-wit, $6,375. Thereafter a contract in writing for the doing of this printing and a bond in the sum of five thousand dollars were drawn up, both of which were certified by the city counsellor to be in due form, which contract and bond were on November 25th duly executed by the Con P. Curran Printing Company. The bond was signed by a surety of unquestioned responsibility. This contract, after being duly signed by the Con P. Curran Printing Company, was delivered to the register, whose duty it was to execute it on behalf of the city. The bond was also delivered to the register. The register did thereupon upon that day duly execute the contract on the part of the city and then took the contract to the comptroller for the latter's counter-signature, as required by section 7 of article 16 of the charter. The comptroller duly counter-signed the contract and returned it to the register, in whose custody all contracts are required, by section 7, article 16 of the charter, to be kept. Later, on that day, the register, having possession of the contract and bond, proceeded with both to the office of the mayor to secure the approval of the sureties on the bond. While he was in the mayor's office, Mr. Player, the comptroller, came in and stated to the mayor that the contract price for doing this printing was in excess of the appropriation therefor. Upon the strength of this statement by the comptroller, the mayor refused to approve the bond, although it is agreed and admitted that the bond was in the amount and condition as required by law and by the printed advertisement for bids and that the security was good.

and sufficient. The mayor's refusal to approve was not caused by any objection to the security or the sufficiency of the bond, but wholly upon the statement that the price named in the contract was in excess of the appropriation.

The comptroller of the city in his annual estimate required by section 20 of article 4 of the charter of the amounts to be appropriated for various items of municipal expenditures submitted to the municipal assembly among other things the following: "Printing the stationery for mayor, comptroller, auditor, register and treasurer, mayor's message and accompanying documents, $5,000; advertising ordinances, etc., books, blanks, printing and stationery, etc., printing and reprinting ordinances, vehicle numbers and dog checks, $28,000; total $33,000." The municipal assembly passed the following ordinance, No. 20756, which was duly approved by the mayor, July 2, 1902, entitled, "An ordinance making appropriations to meet certain expenses of the city government for the fiscal year beginning April 8, 1902, and ending April 13, 1903, including bills unpaid at the beginning of the fiscal year, and transferring certain amounts of temporary appropriations back to their respective revenues." In said ordinance it is provided, "There is hereby appropriated and set apart out of municipal revenue the amounts and for the purpose as hereinafter specified to cover expenditures of the current fiscal year, including bills unpaid at the beginning of the fiscal year, namely: Printing and stationery; for mayor, comptroller, auditor, register and treasurer, $33,000."

Having caused the mayor to withhold his approval of the bond by the statement which he had made, to-wit, that the price in the contract was in excess of the appropriation, Mr. Player proceeded to take a pen and draw a line through his counter-signature on the contract. He did this with the intention of withdrawing

his counter-signature from the contract.    But the printing company, having started the printing of these documents, proceeded to complete the work, and did complete and deliver all the printing called for in the contract.  When completed the printed documents were approved and accepted by the register on behalf of the city and the printing company then rendered its bill against the city for the contract price of $6,375, which bill was certified according to law by the register.  Upon application being made to the city auditor for a warrant upon the treasurer for the payment of this bill, the auditor refused to draw the warrant, stating that he was advised that the contract was invalid for the following reasons:   First, that the contract exceeded the amount appropriated, there being only five thousand dollars appropriated for that purpose.   Second, that the contract was not approved and signed by the comptroller.  Third, that the bond given for the faithful performance of the contract was not approved by the mayor, as required by section 1924 (now 2041) of the Municipal Code.  Thereupon, the Con P. Curran Printing Company brought this suit against the city upon this contract, in which suit judgment was rendered for the contract price, with interest.  From this judgment the city has appealed.

On the part of the city it is insisted that the judgment of the circuit court was erroneous, first, because the remedy resorted to is not available upon plaintiff's own theory, but the action should have been by mandamus.   Second, that there was no contract, because the mayor never did approve the bond and because the comptroller did not countersign the contract. Third, there was no appropriation and without which it was not competent to bind the city; and, fourth, because there was no delivery of the alleged contract.

213 Sup—3

I.  In so far as the contract itself alone is considered it appears that the work had been awarded to the plaintiff after the taking of the competitive bids in strict accordance with the charter and ordinances. The plaintiff was the lowest and best bidder and the contract was awarded to it at the price named in its bid.  The written contract which was drawn up in pursuance of this bid and also the bond for $5,000 were certified by the city counselor to be in due form and they were both executed by the plaintiff company on November 25, 1902.  The bond was in due form and was signed by an admitted solvent surety.  This contract was duly executed by the city register, whose duty it was to represent the city in executing said contract.  The bond was also delivered to the register. Not only was the contract signed and executed by the register, but it was countersigned by the comptroller as required by the charter, and then returned to the register, who by the charter was the custodian of all contracts of the city.  As to the formal execution and delivery of the contract, we are of the opinion that the contract was complete and had been made and executed in strict conformity to the city charter.  The contention that the act of the comptroller in subsequently running his pen through his signature to the contract destroyed the effect of his official act in countersigning the same, in our opinion is not well taken; he could not in this manner withdraw his counter-signature after the contract had been fully executed, delivered and filed with the register.

We fully agree with the City Counselor that the countersigning of a contract of this character by the City Comptroller is not a mere perfunctory matter and that the Comptroller is not a mere figurehead. It was and is his duty to preserve the credit of the city and to see that the disbursements do not exceed the lawful appropriations made therefor, and hence he

is required to countersign all contracts not made by himself made under the charter and ordinances of the city, but in the instant case the Comptroller did countersign the contract which had been already formally executed by the Register in pursuance of the authority vested in him to make this character of a contract for the city. This record does not present the case of a refusal by the Comptroller to countersign the contract, but a case in which that official had countersigned the contract and delivered it to the Register, who was the lawful custodian of the contract after it was thus fully executed. That the Comptroller had a right to erase his counter-signature rests upon his assumption that the contract was still an incomplete instrument, but upon the agreed statement of facts before us we can discover no essential prescribed by the charter or the ordinances which had been omitted in the execution of this contract, and when it was finally filed with the countersignature of the Comptroller therein with the Register, the lawful custodian of such documents, there remained nothing more to do to make it a complete contract. It had been delivered by the plaintiff and it had been executed and approved by the only officers who were required to countersign the same, hence whatever might have been or may be the rights of the Comptroller to withdraw his approval from any contract which had not been fully executed, it seems clear to us that when once the document was fully executed and countersigned and delivered to the final custodian it was then a complete contract and neither party could avoid his obligations thereunder by withdrawing his signature thereto without the full assent of the other party to said contract. We think that the act of the Comptroller in running his pen through his signature under the circumstances was wholly nugatory.

II. But notwithstanding the fact that the contract itself had been let and executed in strict compliance

with all the requirements of the charter and the ordinances, we are confronted with the insistence of the City Counselor that the refusal of the mayor to approve the bond, which plaintiff tendered along with said contract, was a condition precedent to the validity of the contract, and as the Mayor refused to certify his approval the contract failed to become operative or. binding upon the city. That it was the duty of the Register to require the plaintiff to give a good and sufficient bond is unquestionably true. [Section 2041, Revised Ordinances, St. Louis, 1901-1907.] The advertisement for bids notified the bidders that a bond in the sum of $5,000 to be approved by the Mayor would be required. As we understand the contention of the City Counselor the giving of this bond was an essential step in the making of the contract; in other words, that this was a condition to be performed before the otherwise completed contract became valid and binding, and hence a constituent and indispensable part of the right of action. Whether a covenant is a dependent or an independent one must be determined according to the meaning and intention of the parties to it and is often a task of great difficulty. Conditions are generally created by such words as ''on condition,'' ''provided that,'' ''so that,'' and other like phrases, which of themselves import a condition. In the ordinances and charter provisions requiring the giving of a bond by a contractor for the faithful performance of his contract there are no such words. On the contrary the duties prescribed by the ordinance, section 2041, are mutual. After a contract is awarded to the lowest and best bidder, he is required to tender a good and sufficient bond for the performance of his contract, and on the other hand it is the duty of the Mayor to approve such a bond. Of course, the Mayor is not required to approve an insufficient bond, either in amount or form, or when the sureties are not satisfac-

tory to him, but the facts of this case are that after meeting every requirement as to formal execution and delivery of the contract proper, the plaintiff also tendered a bond in the penal sum required by the Register and it is admitted that the bond was approved as to its form by the City Counselor and that the sureties were solvent and the bond good and sufficient and the Mayor declined to approve the same on the sole ground that the contract price for the pamphlets was in excess of the appropriation for that purpose.

The ordinance making the appropriation for that year appropriated and set apart for "printing stationery for Mayor, Comptroller, Auditor, Register and Treasurer" $33,000. It is insisted by the learned City Counselor that because the Comptroller in his estimate of funds required for the fiscal years 1902 and 1903, recommended $5,000 for the printing and stationery for the Mayor, Comptroller, Auditor, Register and Treasurer and Mayor's message and accompanying documents, therefore, the contract for printing the Mayor's message exceeded the amount appropriated for that specific purpose. We are entirely unable to concur in this view. It is admitted that there was at the time this action was brought an unexpended balance of $10,000 in the treasury of moneys appropriated for printing and stationery. While, of course, the Municipal Assembly must pass an ordinance making an appropriation of public money before any contract can be made, which will require the expenditure of such money, we think that the ordinance making the appropriation for the fiscal year of 1902 and 1903 whereby $33,000 was appropriated for printing and stationery for the Mayor, Comptroller, Auditor, Register and Treasurer was as specific as the nature of the subject required, so that the objection which the Comptroller and the Mayor urged against the approval of the bond was, we think, without any foundation in

fact. Doubtless the Mayor acted in good faith in accepting the opinion of the Comptroller that the contract exceeded the appropriation, but that did not alter the fact that there was an appropriation amply large and sufficient to cover this contract and the refusal upon that ground alone was wholly unjustifiable. The ordinance requiring a bond for the faithful performance of these municipal contracts is a wise and salutary one, and its force ought not to be in any manner abated. But we are asked in this case to hold that the refusal of the Mayor to approve a perfectly good and sufficient bond, executed in accordance with the ordinance and tendered as the ordinance required, for an utterly insufficient reason, deprives the plaintiff of its right to compensation for its services rendered in strict compliance with its contract with the city because the Mayor without any sufficient legal reason declined to approve the bond. The plaintiff performed the work of printing the Mayor's message and accompanying documents, and the documents were accepted by the Register, and to hold now that the wrongful refusal of the Mayor to perform the duty which the ordinance devolved upon him would be to permit the city to escape a just duty and obligation by reason of the wrongful act of its own executive. To do so, in our opinion, would be subversive of the plainest principle of justice.

Conceding as we do that the ordinance imposed on the plaintiff the duty of tendering a good and sufficient bond in the penal sum of $5,000 for the faithful performance of its contract with the city to furnish the printed pamphlets containing the Mayor's message and accompanying documents, we think a fair construction of that ordinance also as plainly required the Mayor, when such a bond was tendered to him under the facts developed in this case, to approve the same. These were mutual obligations upon the plain-

tiff and the Mayor. The agreed statement of facts show that the plaintiff did tender a perfectly good and sufficient bond in the form approved by the City Counselor, but the Mayor declined to approve or disapprove the same. The bond was deposited by the plaintiff with the Register; the plaintiff then had done all which the ordinance and its contract required it to do and proceeded to perform the contract in every respect and furnish the printed documents in accordance with the terms of its contract. The default was on the part of the city acting through the Mayor in refusing to approve a good and sufficient bond for the performance of the contract and the question now is, can the city plead the default of the Mayor to avoid its obligation? In analogous cases it has been ruled that it cannot. Thus in the case of People ex rel. v. Fitch, 1 Cal. 519, the relator Casserly had executed a good bond and deposited the same in the proper office, but the Governor whose duty it was to approve the same had failed to act, and yet the relator was decided to be entitled to his office. In the case of Auditor to use v. Woodruff, 2 Ark. 73, it was held in substance that, "Although the statute of Arkansas required the official bond of the State Treasurer to be approved by the Governor, and that approval to be endorsed thereon before the commission issues or the person qualifies, or proceeds to discharge the duties of his office, yet the failure of the Governor to endorse such approval, or to approve the bond neither creates nor destroys, increases or diminishes the obligation of the contract, which, if in every other respect legally executed, is perfect. . . . . The failure of the Governor to approve the bond neither discharges the officer nor his sureties." The same doctrine is announced in Taylor v. Auditor, 2 Ark. 174. These were suits brought upon official bonds against the principal and sureties. In People ex rel. v. Scannell, 7 Cal. 1. c. 441, the Supreme

Court of California, after citing the above cases and others, said: "'If, then, the bond would be good against the sureties, it would not be void as in favor of the officer. In other words, where the officer is not in default, but the default is with the officer or board whose duty it is to approve the bond and in default of such action, the bond is yet held good to bind the officer and his sureties, it must be held sufficient to prevent a forfeiture of his office, until placed in the wrong by the affirmative act of the officer or board, in rejecting the bond." In Smith v. Gugerty, 4 Barb. (N. Y.) l. c. 621, STRONG, P. J., speaking for the court, said: "Undoubtedly a party cannot take advantage of the non-performance of a condition, if such non-performance has been caused by himself." And in Mayor v. Butler, 1 Barb. (N. Y.) l. c. 337, it is said: "No party can insist upon a condition precedent when its non-performance has been caused by himself." In State ex rel. v. Dahl, 65 Wis. l. c. 521, it was urged that because the clerk of a school district refused to approve and file a treasurer's bond, the latter was not the treasurer of said district and there was a vacancy in said office. The Supreme Court said: "We do not think such construction should be given to the law. The person who has been elected or appointed to an office, and who does all that is required of him by law to entitle him to hold the office, cannot be deprived of such office by any wilful or unjust refusal of the person or officer who is required to approve his official bond to give it his approval. If such a rule is to prevail, then the officer whose approval of an official bond is required may, in any case, by such willful and unjust refusal, create a vacancy in an office."

Finally, it is contended that plaintiff's only remedy was to compel the Mayor by mandamus to approve the bond. But under the admitted facts of this case, we do not think this position is tenable. In State ex

rel. v. Knight (Wis.), 51 N. W. 1137, in an action of *quo warranto,* it appeared that the plaintiff in 1890 was elected county treasurer to succeed the defendant, whose term would expire January 6, 1891, and that the plaintiff filed his official bond and oath with the county clerk on January 24th. The county board whose duty it was to approve official bonds were not called together by the chairman of the board within the time required to approve the bond before the term of plaintiff began by law, and for this reason, the defendant refused to turn over the office to the plaintiff and the *quo warranto* was brought to oust him. It appeared that the plaintiff filed his official bond two days before the time expired within which the law required the bond to be filed. The Supreme Court of Wisconsin held that where the plaintiff had done all that was required of him by the law to entitle him to hold the office, he could not be deprived of it by any willful or unjust refusal of the chairman of the county board and a committee of such board to approve his official bond as required by the statute. In that case, as in this, it was insisted on the part of the defendant that the only remedy for the plaintiff, relator, was by mandamus to compel the county board to assemble and act upon the bond, but the Supreme Court, answering this contention, said: "Our conclusion is that there was no occasion for a proceeding by mandamus, a process that would be likely to last through the greater part of relator's entire term, and then to be followed, if successful, perhaps, by *quo warranto,* lasting in all probability, beyond the remainder of it. . . . It is argued by counsel for appellant that, under this view of the law, public interest may be imperiled and suffer, in cases like the present, by officers elect becoming invested with official functions, upon depositing insufficient bonds; but the answer to this suggestion is that this may occur in a variety of cases where public offi-

cers, having important duties, wholly neglect or re-
fuse to perform them, and the real responsibility for
the loss or injury which may occur in such a case as
this is justly chargeable to public officials whose inat-
tention, negligence of duty, or perversity of conduct
has exposed public rights and interests to detriment
or loss. The case of State ex rel. v. Dahl, 65 Wis. 510,
is really decisive of the main question. It was there
held that the willful and unjust refusal of the officer
required to approve the official bond of a person
elected or appointed to an office to give it his approval
cannot deprive such person of his office or create a
vacancy therein. There is no difference in principle
between that case and the present.'' And so we think
here, that where the plaintiff has made a perfect and
binding contract with the city in strict accordance with
the charter and the ordinances and has complied in
every respect with the terms of his contract and the
city has received the full benefit of the contract, to-wit,
the printing of the Mayor's message and accompany-
ing documents, and the plaintiff tendered, as required
by the law, a perfectly valid bond, and the Mayor has
refused to approve that bond under a misapprehension
caused by the Comptroller that there was no appro-
priation out of which to pay plaintiff for the work,
whereas, in fact, there was an ample appropriation
for this specific purpose, it would be unjust and unrea-
sonable to drive the plaintiff to a proceeding by man-
damus, especially in view of the fact that the City
Counselor still maintains in the face of the record that
the Mayor had a discretion to approve or disapprove
the bond. Without countenancing in any way a dis-
regard of those provisions of the charter and ordinan-
ces made for the protection of the revenue of the city,
we hold that, in this case, the plaintiff had a perfectly
valid and binding contract with the city, that it per-
formed its contract in every respect and tendered the

bond required by law, and that it was the duty of the Mayor, under the admitted facts, to approve the bond, and that as the law never requires an unnecessary thing to be done, the plaintiff will not be driven out of court to bring a proceeding by mandamus before it can recover its just dues for the fulfillment of this contract. Accordingly, the judgment must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.